160 F.3d 562
 98 Cal. Daily Op. Serv. 8269, 98 Daily Journal
D.A.R. 11,491
Shannon PAINE, Plaintiff-Appellant,
v.
CITY OF LOMPOC, a municipality; Daniel P. Ast, individually
and as a peace officer; Timothy E. Tietjen, individually
and as a peace officer; R.O. Herbert, individually and as
Chief of Police; City Of Pismo Beach, a municipality;
Michael J. Lynch, individually and as a peace officer; L.
Scott Smith, individually and as a peace officer; John
Derohan, individually and as a peace officer; Michael
Leitcher, individually and as a peace officer; Julie
Carroll individually and as a peace officer; Robert W.
Jones, individually and as a peace officer; Unknown Leong,
individually and as a peace officer; Unknown Petetit,
Investigator, individually and as a peace officer; Unknown
Keesling, Sergeant; individually and as a peace officer;
Brook McMahon, individually and as a Chief of Police,
Defendants-Appellees.
 No. 96-55942.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 3, 1998.
Decided Nov. 6, 1998.
 
 Thomas E. Beck, Law Offices of Thomas E. Beck and Associates, Los Angeles, CA, for plaintiff-appellant.
 Colin L. Pearce, Hatch and Parent, Santa Barbara, CA, for defendants-appellees City of Pismo Beach, Michael Lynch, L. Scott Smith, John DeRohan, Michael Leitcher, Julie Carroll, Brook McMahon, James Leong, Robert Petetit and Jerry Keesling.
 David L. Nye, Carrington & Nye, Santa Barbara, CA, for defendants-appellees City of Lompoc, Daniel Ast, Timothy Tietjen and Robert Herbert.
 Eric J. Parkinson, Parkinson & Haddad, San Luis Obispo, CA, for defendant-appellee Robert Jones.
 Appeal from the United States District Court for the Central District of California J. Spencer Letts, District Judge, Presiding. D.C. No. CV-94-03772-JSL.
 Before: WIGGINS and KLEINFELD, Circuit Judges, and SMITH* District Judge.
 KLEINFELD, Circuit Judge:
 
 
 1
 This is a civil suit arising out of a claim of police brutality. Though there are others, the main issue is adequacy of the voir dire.
 
 Facts
 
 2
 Paine's 42 U.S.C. § 1983 case went to jury trial. The events had occurred on a July 4 evening at Pismo Beach Pier, after a fireworks display. The jury trial lasted 5 1/2 weeks.
 
 
 3
 According to the witnesses for the police officers and municipalities that were sued, they got a report of a fight going on in the parking lot. A witness testified that she directed them toward a circle of spectators watching the fight. Paine and another man, with a bloody shirt, were in the middle of the circle. Someone yelled "Cops!" and the crowd scattered. Paine and the fellow with the bloody shirt went separate ways. The police saw Paine walking away very fast, and tried to stop him. Paine sprinted away. One of the police yelled at him to stop and chased him. When he grabbed Paine by the elbow, Paine pushed him away, so other officers helped get control of Paine. They had a lot of trouble accomplishing that, so one of them used pepper spray. They eventually got Paine handcuffed, tied his hands to his feet, and carried him into a patrol car. They took him to a hospital. An emergency medical technician testified that Paine could bend his knee (Paine claimed knee injury), was belligerent towards the police, and smelled of alcohol. Paine was cited for resisting arrest and battery on a police officer, but the criminal case was dismissed.
 
 
 4
 Paine testified that before the fireworks show, he was making a quick trip to the men's room, when he heard someone say "Look out!" He turned and saw a policeman fall, and get up with his hand on his holstered gun. He ran toward Paine, grabbed him, and told him to get on the ground. Paine yanked his arm away, but another policeman grabbed his other arm. Paine struggled and tried to pull away, and additional police piled on top of him. Someone wrapped something around his legs, hurting his knee. Paine kept asking what he had done wrong. The police kept beating him and choking him, and he fainted when they pepper sprayed him. He woke up, with his hands and feet tied together, in the back seat of a police car. He subsequently was unable to work for three months because he was on crutches, and eventually he got knee surgery because of the injuries (evidence was also introduced that Paine had hurt his knee in a skiing accident).
 
 ANALYSIS
 
 5
 The jury returned a verdict for the defense. Paine appeals, claiming three errors: that (1) the district court should have asked additional questions on voir dire; (2) the court should not have permitted the defense to introduce evidence of a pool hall attack by Paine on his girlfriend and another man; (3) the court should have granted him judgment as a matter of law on his claim that the stop (not the arrest) was unconstitutional.
 
 A. Voir Dire
 
 6
 Paine argues that the district judge did not ask enough questions at voir dire to enable him to exercise his peremptory challenges intelligently. Paine focuses on questions about whether jurors will give an edge to police officers over civilians in evaluating credibility.
 
 
 7
 Paine had submitted a list of proposed questions, and argues that the inquiry the judge made, without using most of his proposed questions, was inadequate. Paine had wanted questions such as "Do any of you feel a peace officer's word is entitled to greater believability than that of a civilian witness? If so, why?" He also wanted the judge to ask whether anyone on the panel had ever heard of Mark Fuhrman or Rodney King.
 
 
 8
 The judge handled the issue differently. He told the members of the panel that he would not ask them whether they would favor or disfavor police officer testimony over someone else's, because, he instructed them, "you are not going to do that." He told the panel right at the outset that what juries do is "look at the person who speaks and they're going to decide how much of it they believe and how much of it they don't believe." He did ask the jurors two questions designed to elicit bias either way. First, he asked whether any members of the panel had especially good or bad experiences with police officers. Second, he asked whether for any reason, whether he had asked a question that would elicit it or not, any one on the panel could not be absolutely fair to everybody whether they were law enforcement people or not. At the conclusion of the case, the judge instructed the jury that testimony of police officers was entitled to no special deference, should not be believed merely because "they're the police department," and should be subject to the same testing and examination by the jury as anyone else's testimony.
 
 
 9
 Paine argues that many jurors give the edge to police officers in matters of credibility, so more searching inquiry is needed to filter out the bias. While his proposed questions about Mark Fuhrman and Rodney King suggest that Paine expected and sought jurors who were biased against police testimony, he is right in his general point, that the voir dire ought to be adequate to assure an impartial jury, by enabling the parties intelligently to exercise their challenges. Darbin v. Nourse, 664 F.2d 1109, 1113 (9th Cir.1981).
 
 
 10
 A district judge has broad discretion in how to conduct the voir dire, and we review only for abuse of discretion. "It is wholly within the judge's discretion to reject supplemental questions proposed by counsel if the voir dire is otherwise reasonably sufficient to test the jury for bias or partiality." United States v. Powell, 932 F.2d 1337, 1340 (9th Cir.1991).
 
 
 11
 Paine argues that in this case, the voir dire was insufficient, under United States v. Baldwin, 607 F.2d 1295 (9th Cir.1979), Darbin v. Nourse, 664 F.2d 1109, 1113 (9th Cir.1981), and United States v. Contreras-Castro, 825 F.2d 185 (9th Cir.1987). The cases are distinguishable. Baldwin says that whether a question need be asked about police credibility depends on various case-specific circumstances, and "the decisive factor" requiring reversal in that case was that the judge not only did not ask about credibility, but also refused to ask whether members of the panel knew or were related to police officers. All Darbin stands for is that the judge cannot conduct a one-sided inquiry, because the facts in that case were that the judge asked about prejudice against police officers but not prejudice in their favor. Only people related to police officers were asked whether that would prejudice them either way.
 
 
 12
 In Contreras-Castro, we emphasized that we considered failure to inquire about bias in favor of police officers "in light of factors such as," among others, whether the issue was "covered in other voir dire questions and in the jury instructions." Contreras-Castro, 825 F.2d at 187. The whole case boiled down to a swearing match between one government agent and the defendant about the defendant's scienter, there was no corroboration for the government's case, and the judge never asked anything about bias in favor of government witnesses. In the case at bar, by contrast, the judge plainly instructed the jury to evaluate police testimony like anyone else's, during the voir dire and in the instructions at the end of the trial, and did ask about biases in favor of or against police officers.
 
 
 13
 The case at bar is more like United States v. Powell, 932 F.2d 1337 (9th Cir.1991), and United States v. Payne, 944 F.2d 1458, 1475 (9th Cir.1991). In those two cases, we affirmed, despite the judge's refusal to ask whether jurors would give more weight to police than civilian testimony. In Powell, we distinguished Contreras-Castro because there was corroboration for the government's case, the venire was tested for pro-police bias by other questions, and the judge instructed the jury to use the same standard to evaluate credibility regardless of occupation. That is indistinguishable from the case at bar. Likewise in Payne.
 
 
 14
 The judge was within his discretion in handling the issue as he did. An intelligent, impartial, venireman, asked if he would give more weight to a police officer's testimony than to someone else's, might reasonably answer "it depends" rather than "no." As then-Judge Kennedy said, a juror asked whether police officers were generally more deserving of belief than prisoners would not provide a ground for a challenge for cause by saying "yes." The reasonable answer might be "I should hope so!":
 
 
 15
 Were a juror to announce that most law officers, by reason of their profession and their oath, are trustworthy and honest, but that similar respect cannot be accorded to prisoners, I should be gratified, not shocked. Those principles are consistent with responsible citizenship and are not a ground to challenge the juror for cause.
 
 
 16
 Darbin, 664 F.2d at 1116 (Kennedy, J., concurring).
 
 
 17
 While some circumstances may require voir dire on bias in favor of police officer credibility, there is no automatic reversal for the lack of it. Payne, 944 F.2d at 1475. Whether absence of such questions is an abuse of discretion depends on the circumstances. The judge did not abuse his discretion in this case. The circumstances in this case included more evidence than one police officer's uncorroborated testimony against one defendant's, plain instructions by the judge not to accord extra deference to police credibility, and other questions which would elicit partiality in favor of or against police officers' conduct or testimony.
 
 B. Pool hall incident
 
 18
 Paine's girlfriend was living with him at the time he was arrested, and at the time of trial, but she had broken up with him for a period in between. She testified that she had thrown him out for six months because he was so depressed from his knee injuries and continuing medical care that all he did was lie on the sofa, and she had to support him and take care of him in every way. The prosecutor impeached her by eliciting that Paine had caught her with another man in a pool hall, knocked the other man down, and when she tried to call 911, grabbed the phone from her, hitting her in the face with it.
 
 
 19
 Paine argues that this pool hall evidence was irrelevant and unfairly prejudicial, because all it showed was unattractive character, inadmissible under Federal Rule of Evidence 404(a). We review for abuse of discretion. United States v. Ortland, 109 F.3d 539, 543 (9th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 141, 139 L.Ed.2d 89 (1997).
 
 
 20
 The judge was within his discretion in deeming the evidence to be relevant for appropriate purposes, with probative value outweighing the risk of unfair prejudice. The pool hall incident did create some risk of unfair prejudice; jurors might not want to give an award to a man who behaved so violently on a different occasion in a pool hall, even if he was entitled to it. But the pool hall incident was relevant to damages and to the girlfriend's credibility on all of her testimony. The damages issue was whether she had broken up with Paine because of his knee injuries, helplessness, and depression, or because of the way he acted in the pool hall or some other reason. Unimpeached, her testimony was very strong on damages, because she said Paine even needed help taking a shower. But if the jury thought she was lying about why she threw him out, then it might disbelieve everything she said about his knee injury, and also about the arrest. The way that the pool hall evidence came out, a conflict between what she told the jury about it, and what she had told the police about it right after it happened, bore heavily on her credibility. The judge could and did reasonably decide that the jurors were entitled to the evidence.
 
 C. Terry Stop
 
 21
 The judge let the jury decide whether the first officer who grabbed Paine had sufficient basis to do so. Paine does not quarrel with the jury instruction. His position is that the judge should not have let the question go to the jury at all. He argues that as a matter of law, the police lacked reasonable suspicion sufficient to justify a stop, based on Morgan v. Woessner, 997 F.2d 1244 (9th Cir.1993).
 
 
 22
 Asked why he had stopped Paine, the policeman testified that he had seen what looked like a fight, and what a woman told him was a fight. Then he saw Paine and the other fellow (the one with the bloody shirt) "walking very quickly in what appeared to be them trying not to have contact with the police." He stopped Paine, and Paine shoved him backwards with both hands.
 
 
 23
 Morgan is distinguishable. In that case, the police had no basis for the stop except that a black drug courier in an airport said his companion "looked like me," and Morgan was black and, when he saw the police talking with the courier, turned and walked away. All black men cannot be objects of reasonable suspicion just because a black male courier suggests that his companion "looks like me." Nor is it suspicious that a man in an airport would leave to go about his business when he saw a police encounter occurring. Many innocent and prudent people, upon seeing what looks like trouble and potential violence, will depart. By contrast, the policeman who stopped Paine had articulable facts supporting a reasonable suspicion that Paine had been involved in the fight. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Walking quickly away from the police in an apparent attempt to avoid them was not all the policeman knew. The context included the report of a fight, seeing the ring of people, and seeing Paine and the other fellow with a bloody shirt leaving quickly after someone yelled "Cops!" The police can consider whether conduct is suspicious "in the context of other information or surrounding circumstances that the police are aware of." Guam v. Ichiyasu, 838 F.2d 353, 355-56 (9th Cir.1988). The context here gave rise to reasonable suspicion that there was a fight and that Paine was one of the fighters.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Fern M. Smith, United States District Judge for the Northern District of California, sitting by designation