

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-18-2003

# Butler v. Camden

Precedential or Non-Precedential: Precedential

Docket No. 02-2903

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Butler v. Camden" (2003). *2003 Decisions.* Paper 8.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/8

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 18, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2903

LEONARD BUTLER;
SHIRLEY BUTLER, H/W,

Leonard Butler,
*Appellant*

v.

CITY OF CAMDEN, CITY HALL; TOWNSHIP OF
PENNSAUKEN; TOWNSHIP OF CHERRY HILL; ROBERT
ALLENBACH, POLICE CHIEF, CAMDEN POLICE
DEPARTMENT; GALIAZZI, SERGEANT, CAMDEN POLICE
DEPARTMENT; JEFF FRETT, POLICE OFFICER, BADGE
NO. 133, CAMDEN POLICE DEPARTMENT,
*Appellees*

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 99-cv-4367)
District Judge: Honorable Stephen M. Orlofsky

Argued June 26, 2003

Before: SLOVITER, AMBRO, *Circuit Judges*,
and TUCKER,* *District Judge*

(Opinion Filed: December 18, 2003)

* Honorable Petrese B. Tucker, United States District Court Judge for the
Eastern District of Pennsylvania, sitting by designation.

Alan E. Denenberg, Esquire (argued)
Abramson & Denenberg, P.C.
1200 Walnut Street
Sixth Floor
Philadelphia, PA 19107

Attorney for Appellant

Jonathan E. Diego, Esquire
Marc A. Riondino, Esquire (argued)
Office of the City Attorney
4th Floor, City Hall, Suite 419
P.O. Box 95120
Camden, NJ 08101-5120

Attorneys for Appellees

---

## OPINION OF THE COURT

---

TUCKER, *District Judge.*

This is an appeal from a defense verdict following a jury trial. Appellant's complaint alleged violations of his constitutional rights resulting from excessive force allegedly used against him by police officers following an early morning high speed chase through Camden and Pennsauken, New Jersey. Prior to trial all defendants except Camden City Police Officer Jeffrey Frett were dismissed.[1] The jury was charged on two counts against Officer Frett, excessive force in violation of the Fourteenth and Fourth Amendments and bystander liability under the federal civil rights statute, 42 U.S.C. § 1983. Appellant has raised four assignments of error on this appeal.[2] Our disposition of this case requires that we only consider the first question, which asks whether the district court's

---

1. Appellant's complaint also named a second Camden City police officer and the police chief, the City of Camden, and the townships of Pennsauken and Cherry Hill.

2. The jury returned its verdict on March 13, 2002, and judgment was entered on March 19, 2002. Appellant filed a timely Petition for Reconsideration/Motion for New Trial, which was denied by order of the district court on June 5, 2002. The instant appeal timely followed.

conduct of the *voir dire* infringed upon Appellant's right to have his case decided by a fair and impartial jury.

## I.  *BACKGROUND*

### A.  Facts

The facts as developed at trial are as follows.[3] On September 16, 1997, at approximately 1:00 a.m., Butler lead Camden City police officers on a 5-10 minute high speed chase. Butler did not stop until he reached Pennsauken, New Jersey, where he lived, stopping his car in the parking lot of the Liquor Ranch store. Butler claims he put his hands in the air at this point, a fact the defense disputed at trial. Thereafter Butler testified that two unknown officers approached his car with their guns drawn. Officer Frett, the third officer to approach, pulled Butler from the car and threw him face first to the ground. According to Butler, at this point Officer Frett and the two unknown officers proceeded to beat him for the next 3-5 minutes about the head and body while he was "handcuffed and offered no resistance." The beating is alleged to have continued until one of the unknown officers said "stop that's enough." Butler also testified that he heard another officer comment, "I didn't think he could take an ass kicking like that." Butler was then placed under arrest and charged with aggravated assault, resisting arrest and eluding arrest. Appellant's lawsuit claims that he suffered a variety of physical injuries and "severe" emotional trauma as a result of the alleged beating.

### B.  Voir Dire Examination

The trial judge conducted the questioning of the jury pool at *voir dire.* Following his initial examination, he called counsel to sidebar to determine whether they had any

---

3. Appellee did not provide a counterstatement of facts and indicated only that he agreed with Appellant's first paragraph, except for Appellant's statement that he placed his hands in the air after he stopped the car. The recitation of the facts are therefore taken from Appellant's statement of the facts. *See* Appellant's Br. at 4-5.

supplemental questions to be asked of the jury panel. Appellant's counsel requested that the district court propound the following four questions on the subject of law enforcement bias:

1. "Whether or not any members of the panel are more inclined to believe the testimony of a law enforcement officer over the testimony of a citizen." N.T. (3/4/02) at 40.

2. "Does anyone have any feelings either adverse or pro toward police in general." N.T. (3/4/02) at 41.

3. "Whether or not anyone was more inclined to feel force used by the Police Department was lawful simply because it was done during the course of an arrest?" N.T. (3/4/02) at 42.

4. "Whether or not any of the jurors have adverse feelings about individuals that lead police on pursuit." N.T. (3/4/02) at 45.

The trial judge denied the first request, stating, "Just put that in your requests to charge and I'll put that in the charge to the jury . . . I give it as a standard charge in all cases, anyway." N.T. (3/4/02) at 40. Regarding the second question, the following exchange took place between the court and counsel:

MR. DENENBERG [appellant's counsel]: Okay. I just thought it would be better to preempt that now, if anyone here had any feelings one way or another for or against police officers based on any experience that they had.

THE COURT: Well, I tried to elicit that, but no one on the panel has ever been arrested, no one on the panel has ever served for a Police Department, nor does anyone on the panel have anyone in their immediate family who's been with the Police Department, except for one individual, and none of them have been arrested, nor has any member of their immediate family been arrested.

MR. DENENBERG: Okay. I think my question is a little different with respect to — you know.

THE COURT: Well, I will deal with that in the charge. If you want me to, I'll charge — I give that charge, that they are to consider the testimony of all witnesses without regard to their occupations or whether they are members of the clergy or members of the Police Department.

MR. DENENBERG: My question is a little different, as well as the second question, does anyone have any feelings either adverse or pro toward police in general. It would work both ways, toward both the defendant and the plaintiff.

MR. DIEGO [defense counsel]: I don't have any problem with the question being asked, I think the information we're eliciting lends itself to that.

THE COURT: Well, I don't want to — my reluctance in asking that, I have no problem with giving a charge to that effect, my reluctance in asking it at this point is that no one on the panel so far has given me any indications that they've ever been arrested or that they believe or disbelieve a police officer or anybody else and I don't want to highlight that. But, I will give you a charge in the charge that they are to consider the testimony equally. I think that in asking that question at this point, in light of what the *voir dire* has revealed, is more prejudicial than helpful.

N.T. (3/4/02) at 40-42. The trial court rejected Appellant's request to propound the fourth question on a similar basis. N.T. (3/4/02) at 45 ("I think by asking that question I make it worse."). The court concluded the third question was inappropriate since it concerned a question of law that should be addressed in the jury charge. The court did not give the jury an instruction on the subject of law enforcement bias.

## II.   JURISDICTION

The district court had jurisdiction over Appellant's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. Our appellate jurisdiction

over the district court's denial of Appellant's motions for post-trial relief and a new trial is derived from 28 U.S.C. § 1291. *See Kirk v. Raymark Industries, Inc.*, 61 F.3d 147, 152 (3d Cir. 1995).

### III.  DISCUSSION

### A.

The issue we decide is whether the district court erred in denying Appellant's request to question the venire panel regarding potential law enforcement bias.[4] The purpose of the *voir dire* is to both "enable[ ] the court to select an impartial jury and assist[ ] counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415 (1991). The trial court's duty to seat an impartial jury requires that it test prospective jurors for actual bias and strike for cause those persons "who will not be able to impartially follow the court's instructions." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981); *United States v. Napoleon*, 349 F.2d 350, 353 (3d Cir. 1965) ("[t]he trial court, while impaneling a jury, 'has a serious duty to determine the question of actual bias.'"). Since the trial judge "must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions," the trial judge is necessarily vested with broad discretion in determining the manner and scope of the questioning. *Rosales-Lopez*, 451 U.S. at 188-89. This discretion is well established under federal case law, and an abuse of discretion will only be found where the district court's *voir dire* examination is "so general that it does not adequately probe the possibility of prejudice." *Waldorf v. Shuta*, 3 F.3d 705, 710 (3d Cir. 1993) (citing *United States v. Boise*, 916 F.2d 497, 505 (9th Cir. 1991)) (add'l citation omitted). *See also United States v. Salamone*, 800 F.2d 1216, 1226 (3d Cir. 1986) ("[f]ailure to make the necessary inquiry deprives the trial court of the benefit of the factual predicate that justifies an exclusion for cause.").

---

4. We review the district court's conduct of *voir dire* for abuse of discretion. *United States v. Wooten*, 518 F.2d 943, 945 (3d Cir. 1975).

It is well established as well that criminal and civil litigants have "the right to examine jurors on the *voir dire* as to the existence of a disqualifying state of mind" to allow for intelligent exercise of peremptory challenges. *Napoleon*, 349 F.2d at 353 (quoting *Aldridge v. United States*, 283 U.S. 308, 313 (1931)). Peremptory challenges, though not constitutionally mandated, *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (citations omitted), are recognized as a "necessary part of trial by jury" and their exercise may not be impermissibly infringed. *Kiernan v. Van Schaik*, 347 F.2d 775, 780 (3d Cir. 1965) (citing *Pointer v. United States*, 151 U.S. 396, 408 (1894)). To facilitate informed use of peremptory strikes, a party may submit questions for the trial court to pose to the jury pool to "probe for the hidden prejudices of the jurors" that may not otherwise be discovered. *Napoleon*, 349 F.2d at 353 (citation omitted); Fed. R. Civ. P. 47(a) (providing that where the court conducts the *voir dire* examination, "the court . . . shall itself submit to the prospective jurors such additional questions of the parties or their attorneys as it deems proper"). *Compare* Fed. R. Crim. P. 24(a). Notwithstanding, it is generally not required that the "district judge . . . pursue any specific line of questioning on voir dire." *Waldorf*, 3 F.3d at 710. However, the "trial court['s] . . . broad discretion as to the questions to be asked . . . [is] subject to the essential demands of fairness." *Wooten*, 518 F.2d at 945 (citation and internal quotations omitted). What is required of the district court is that it make those inquiries necessary to satisfy both its duty to select an impartial jury and allow for intelligent exercise of peremptory challenges. *Napoleon*, 349 F.2d at 353.

## B.

Appellant contends that district court's failure to question the prospective jurors on potential law enforcement bias was prejudicial and impaired his right to a fair and impartial jury. Appellant argues that this inquiry was necessary and proper since all his witnesses on liability were civilians and defense witnesses were exclusively police officers, and the resolution of the dispute at trial turned on the credibility of these witnesses. Appellant further

contends that the prior precedents of this circuit and the majority of circuit courts to address this issue weigh in his favor. Conversely, Appellee contests Appellant's claim that he was entitled to have the particular questions he proffered at *voir dire* asked of the panel, and contends that the trial court acted within its discretion and made those inquiries necessary to safeguard against any disqualifying disposition toward law enforcement.

This court has not addressed the precise issue raised on this appeal. Challenges to the adequacy of the *voir dire* respecting juror attitudes toward police officials have primarily arisen in the context of criminal trials, with the issue also arising in some reported civil rights cases. *See Paine v. City of Lompoc*, 160 F.3d 562 (9th Cir. 1998); *Darbin v. Nourse*, 664 F.2d 1109 (9th Cir. 1981). The majority of federal courts of appeals to have passed on this question have held that the district court may, in certain circumstances, commit error when it fails to examine the jury pool for potential law enforcement bias when requested by counsel.[5] *See, e.g., Brown v. United States*, 338 F.2d 543 (D.C. Cir. 1964); *United States v. Victoria-Peguero*, 920 F.2d 77 (1st Cir. 1990); *United States v. Gelb*, 881 F.2d 1155 (2d Cir. 1989); *United States v. Baldwin*, 607 F.2d 1295 (9th Cir. 1979); *United States v. Spaar*, 748 F.2d 1249, 1254 (8th Cir. 1984); *United States v. Espinosa*, 771 F.2d 1382 (10th Cir. 1985). In *Brown*, a leading case on this subject, the Court of Appeals for the District of Columbia Circuit, in recognizing the special deference a police officer's credibility may be afforded by some venirepersons, observed:

> [W]hen important testimony is anticipated from certain categories of witnesses, whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination is not only appropriate but should be given if requested.

338 F.2d at 545 (then-Circuit Judge Burger). Courts following *Brown* have held that parties are entitled to have

---

5. *But see United States v. Lancaster*, 96 F.3d 734 (4th Cir. 1996) (*en banc*), *overruling United States v. Evans*, 417 F.2d 800 (4th Cir. 1990); *United States v. Lawes*, 292 F.3d 123 (2d Cir. 2002) (split panel).

the trial court examine the attitudes of the prospective jurors on the question of law enforcement bias as a means of providing "the parties . . . some surface information about prospective jurors which might furnish the basis for an informed exercise of peremptory challenges or motions to strike for cause based upon a lack of impartiality," *Baldwin*, 607 F.2d at 1297 (citing *United States v. Segal*, 534 F.2d 578, 581 (3d Cir. 1976)) (add'l citation omitted), though reversal is not mandated in all cases.

The cases in our circuit concerning the adequacy of the *voir dire* examination have applied these same principles. It is the rare case that the failure to ask a *particular* question has resulted in reversal. However, we have found error and reversed in cases where the district court barred all inquiry into a relevant *subject matter* designed to elicit a disqualifying prejudice. In *United States v. Segal, supra*, a certified public accountant was prosecuted for conspiracy and attempted bribery in connection with an Internal Revenue Service ("IRS") audit. The accountant and his co-defendant requested *voir dire* on the question of whether any prospective juror or his or her immediate family had worked for the IRS or, alternatively, the state or local equivalent. The district court denied the request and we vacated the convictions. In deciding the case, we first acknowledged that "the parties have the right to some surface information about prospective jurors which might furnish the basis for an intelligent exercise of peremptory challenges or motions to strike for cause based on a lack of impartiality." 534 F.2d at 581 (citing *Ristaino v. Ross*, 424 U.S. 589, 598 n.9 (1976); *Kiernan, supra*). A new trial was merited, the court concluded:

> [b]ecause of the circumstances in this case, the defendants would reasonably need to know whether any member of the panel or any person in his family had ever been employed with the Internal Revenue Service. The possibility of lingering loyalty to the service, friendship of person still employed there, or knowledge of agency procedures are all factors which counsel would weigh in deciding whether to challenge.

*Id.*

Similarly, in *United States v. Salamone*, *supra*, this court vacated a conviction where the district court categorically excluded all National Rifle Association ("NRA") members in the jury pool by reason of their association without further inquiry. We held that the restricted scope of the *voir dire* "deprive[d] the trial court of the benefit of the factual predicate that justifies an exclusion for cause." 800 F.2d at 1226. Finally, in *Kiernan v. Van Schaik*, *supra,* a negligence action, the trial judge was found to have committed reversible error for refusing to propound questions designed to discover whether any panel members were employed by or had financial interests in a casualty insurance company or were employed as claims adjusters or insurance agents upon the plaintiff's request. These questions, the court held, were "relevant in ascertaining bias against one claiming damages for negligence." 347 F.2d at 782. *See also United States v. Poole*, 450 F.2d 1082 (3d Cir. 1971) (refusal to ask prospective jurors whether they or a family member had been a victim of robbery in an armed robbery trial reversible error).

Appellee urges that these cases are distinguishable from the present because the district court asked the panel whether anyone had been arrested and whether they or an immediate family member were or had been employed by a police department, and these questions were adequate to elicit potential pro police bias. *See* N.T. (3/4/02) at 40-41. We are not persuaded. There is no basis to conclude that only arrestees or persons employed in law enforcement or their immediate relatives may harbor a disqualifying bias toward the police. As the First Circuit has observed, some venirepersons may believe "[l]aw enforcement officials wear an invisible cloak of credibility by virtue of their position." *United States v. Anagnos*, 853 F.2d 1, 4 (1st Cir. 1988) (quoting *United States v. Patriarca*, 402 F.2d 314, 321 (1st Cir.), *cert. denied*, 393 U.S. 1022 (1969)).

Appellee does not cite to any independent evidence presented at trial which corroborated his or the other officers' testimony. Thus the trial in this case essentially boiled down to a swearing contest between Appellant and the responding police officers. In light of these circumstances, we are in accord with our sister circuits

which have held that "[w]here government [law enforcement] agents are apt to be key witnesses, the trial court, particularly if seasonably requested, should ordinarily make inquiry into whether prospective jurors are inclined to have greater faith in the agents' testimony merely by virtue of their official positions." *United States v. Victoria-Peguero*, 920 F.2d 77, 84 (1st Cir. 1990) (citing *Anagnos*, 853 F.2d at 3) (add'l citations omitted); *Spaar*, 748 F.2d at 1254 ("We agree that a *voir dire* inquiry of the type . . . stated in *Brown*, 'is not only appropriate but should be given if requested.' ").

Of course, reversal is not necessarily compelled in every case where an error of this nature is committed. *See Paine*, 160 F.3d at 565 ("[w]hile some circumstances may require voir dire on bias in favor of police officer credibility, there is no automatic reversal for the lack of it."); *Gelb*, 881 F.2d at 1165 (same); *United States v. Cardales*, 168 F.3d 548 (1st Cir. 1999) (no plain error where the defendant failed to request that trial court test jurors for potential police bias). We believe the harmless error analysis of the *Baldwin* court is appropriate and look to the following factors to determine whether the error in the *voir dire* served to deny Appellant his right to have his claims decided by a fair and impartial jury:

> [1] importance of the government agent's testimony to the case as a whole; [2] the extent to which the question concerning the venireperson's attitude toward government agents is covered in other questions on voir dire and on the charge to the jury; [3] the extent to which the credibility of the government agent-witness is put into issue; and [4] the extent to which the testimony of the government agent is corroborated by non-agent witnesses [or evidence].

*Baldwin*, 607 F.2d at 1298, *quoted in Gelb*, 881 F.2d at 1164. We also consider a fifth factor: the extent to which the trial court's charge to the jury may have remediated any prejudice. *Paine*, 160 F.3d at 565. As discussed previously, the defense's case on liability consisted entirely of the testimony of Officer Frett and the other responding police officers and the outcome of this case was thus predicated on the jury's determination as to these witnesses'

credibility. The court's examination at *voir dire* did not touch upon the subject of potential police bias, and was limited to an inquiry into the panel's arrest background and employment and familial connections to law enforcement. Nor did the district court's charge to the jury include an instruction against police bias, despite the trial judge stating that such an instruction was standard and would be included in the charge.

Notwithstanding, Appellee contends that the "equal standing of the parties" charge given by the district court effectively mitigated any prejudice Appellant may have suffered during the jury selection process. Again, we are not persuaded. The district court instructed the jury:

> This case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and of the same station in life. The parties in this case, the plaintiff and defendant, are on an equal footing in this Court. You should base your verdict on an objective evaluation of the evidence that has been presented.

N.T. (3/13/02) at 20.[6] The concern in this case is that there may have been venirepersons in the jury pool who were dispositioned to credit the testimony of a police officer over that of a civilian simply by reason of the officer's official status, and the district judge failed to engage in questioning which would have assisted him and counsel in identifying such venirepersons. Jurors are assumed to follow the law as instructed by the court. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("the almost invariable assumption of the law that jurors follow their instructions") (internal citation omitted). Thus, in some cases, depending on the circumstances, it may fairly be concluded that a police credibility charge substantially similar to that proposed by Appellant at trial had the effect of curing any

---

6. The trial transcript of the charge conference and the district court's charge to the jury is provided in Appellant's supplemental appendix, submitted pursuant to this court's order issued at oral argument. *See* Fed. R. App. P. 10(e). The supplemental appendix also includes Appellant's proposed jury instructions as well as the district court's written charges.

harm resulting from an inadequate *voir dire*.[7] *See Victoria-Peguero*, 920 F.2d at 85; *United States v. Nash*, 910 F.2d 749, 755-56 (11th Cir. 1990). Such determinations, however, must be made on a case-by-case basis. *Paine*, 160 F.3d 565.

We need not make that determination in this case since a law enforcement bias charge was not given by the district court.[8] The equal standing charge was not an adequate substitute because it failed to draw the jurors' attention to the fact that the testimony of the police officers was not to be given any more or any less weight than any other witness by reason of their status as police officers. The district court's general instruction on witness credibility was likewise inadequate. In reaching this conclusion we do not decide that Appellant was entitled have the court ask all the supplemental questions he proposed. It is the trial court's province to determine the questions to be asked, their phrasing and the scope of the inquiry into any subject matter, subject only to the requirements of fundamental fairness. *United States v. Dansker*, 537 F.2d 40, 56 (3d Cir. 1976) (citing *Wooton*, *supra*); *Paine*, 160 F.3d at 565 (no error where trial court posed "other questions [on the subject of police bias] which would elicit partiality in favor of or against police officers[ ]"). The first two questions proposed by Appellant essentially cover the same ground, and the district court may on remand reasonably conclude that these questions are duplicative. Appellant's fourth

7. Appellant requested the following charge on police credibility at trial: "The testimony of a law enforcement officer is entitled to no more or less consideration based on the fact that the witness is employed in the law enforcement field. You are to evaluate the officer's testimony as you would any other witness." Appellant's Suppl. Appendix at 9. *See also* N.T. (3/12/02) at 5-6.

8. During *voir dire*, the trial judge indicated a willingness to include a police related bias charge in his instructions to the jury, but expressed the concern that questioning the jury pool on this issue would be "more prejudicial than helpful." The trial judge did not expound on the basis for this belief and we will not speculate. However, we note the appropriate time to first address concerns about potential juror impartiality, particularly regarding matters material to the case, is during the *voir dire* examination.

question broadens the inquiry into jury pool's attitudes toward law enforcement. It is within the district court's discretion to determine whether additional questioning in this area is necessary to facilitate the selection process. As for the third question concerning whether a juror would be inclined to believe that any force used in the course of an arrest was lawful, the district court was well within its discretion in concluding that this matter concerned a question of law to be covered by the jury charge and not *voir dire.*

Thus we recognize that the district court possesses wide latitude over the determination of the particular questions to be asked, and the scope of the inquiry at *voir dire. See, e.g., Dansker,* 537 F.2d at 56; *United States v. Madrigal,* 43 F.3d 1367, 1372 (10th Cir. 1994) (no abuse of discretion "when the court inquires into the proposed subject matter in its own questions"). However, the law requires that the district court make those "inquiries relevant to the discovery of actual bias" and which, in the final analysis, satisfy "the essential demands of fairness." *Dansker,* 537 F.2d at 56; *Wooten* 518 F.2d at 945. We find that the district judge failed in this task.

## IV. *CONCLUSION*

Based on the foregoing, we vacate the judgment entered below and remand for a new trial.

A True Copy:
     Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*
