NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4025
_____

UNITED STATES OF AMERICA

v.

JEROME BLYDEN,

Appellant
_____

On Appeal from the District Court of the Virgin Islands
Appellate Division of St. Croix
(D.C. Criminal Action No. 3-09-cr-00020-002)
District Judge:  Honorable Curtis V. Gomez
_____

Argued April 13, 2011
_____

Before:  SCIRICA, RENDELL and AMBRO, Circuit Judges

(Opinion filed   June 9, 2011 )

Treston E. Moore, Esquire (Argued)
Moore, Dodson & Russell
5035 (14A) Norre Gade
P.O. Box 310
Charlotte Amalie, St. Thomas, VI  00802

        Counsel for Appellant

Ronald W. Sharpe
   United States Attorney
Nolan D. Paige (Argued)
   Assistant U.S. Attorney

Kelly Lake, Esquire
Kim R. Lindquist, Esquire
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
Charlotte Amalie, St. Thomas, VI   00802-6924

_____

OPINION
_____

AMBRO, Circuit Judge

Presented with evidence of his involvement with Gelean Mark, a grand jury

indicted Jerome Blyden for, *inter alia*, participating in the affairs of the "Mark-Blyden

Enterprise" (an organization engaged in illegal narcotics distribution, unlawful gambling

related to dog fighting, and violent acts) through a pattern of racketeering activity, in

violation of 18 U.S.C. § 1962(c) (Count One); and the assault with a dangerous weapon

of Trevor Nicholas Friday, Jr., in aid of racketeering, in violation of 18 U.S.C.

§ 1959(a)(3) (Count Three).  The jury acquitted on Count One but convicted on Count

Three.  The District Court sentenced Blyden to 78 months in prison.  He raises several

claims of error.  As they are not persuasive, we affirm.[1]

I.

Blyden first challenges the sufficiency of the evidence supporting his conviction.

"[W]e must view the evidence in the light most favorable to the government and must

_____

[1]  The District Court of the Virgin Islands had jurisdiction pursuant to 18 U.S.C.
§ 3231 and 48 U.S.C. § 1612(c).  We have jurisdiction under 28 U.S.C. § 1291, 48 U.S.C.
§ 1613, and 18 U.S.C. § 3742.

2

sustain the jury's verdict if a reasonable jury believing the government's evidence could find guilt beyond a reasonable doubt." *United States v. Vosburgh*, 602 F.3d 512, 537 (3d Cir. 2010) (internal quotation marks and citation omitted).

Blyden argues that the evidence was insufficient for several reasons, none of which is persuasive. First, sufficient evidence showed that the enterprise existed prior to the May 24, 2004, shooting of Friday, thereby supporting the finding that the assault was in aid of racketeering. Mark associate Elton Turnbull testified that he was helping Mark move drugs through the St. Thomas airport to North Carolina by a specific *modus operandi* as early as 1999, and Mark associate Glenson Isaac testified that he had a business relationship with Mark, involving dog fighting and drugs, as of March 2003.

In addition, Turnbull's testimony that dogs were sent from North Carolina to the Virgin Islands established sufficient contacts between the enterprise and interstate commerce.[2] *See United States v. Dickens*, 695 F.2d 765, 781 (3d Cir. 1982) ("Even a minimal nexus [with interstate commerce] will satisfy the statutory requirement."). Moreover, the evidence was sufficient to show that Blyden committed the assault "for the purpose of . . . maintaining or increasing position in [the] enterprise," 18 U.S.C. § 1959(a), because Isaac testified that Mark described Blyden as his "bodyguard;" Friday's aunt testified that Blyden told her that Friday owed his "partner" (Mark) money, and that Blyden threatened to do bodily harm to Friday; and Blyden's ex-girlfriend

---

[2] Isaac testified that Blyden worked security at one of the dog fights and collected money from attendees.

3

testified that, on the night of the assault, she overheard Blyden show his allegiance to Mark by offering to cover up the shooting.

Finally, we reject Blyden's contention that the evidence was insufficient for an aiding and abetting theory because 18 U.S.C. § 1959(a)(3) "does not authorize conviction for aiding and abetting another." Appellant's Br. at 27. Count Three charged Blyden under 18 U.S.C. §§ 1959 and 2, the latter of which provides that "[w]hoever commits an offense against the United States[,] or aids, abets, [or] counsels . . . its commission, is punishable as a principal." 18 U.S.C. § 2(a). This provision "authorize[s] conviction for aiding and abetting," Appellant's Br. at 27, even if 18 U.S.C. § 1959(a)(3) does not.

In light of the foregoing, Blyden's various challenges to the sufficiency of the evidence supporting the jury's verdict on Count Three fall well short.[3]

## II.

Blyden next argues that the jury could not have acquitted him on Count One while convicting him on Count Three, because once the jury found that he did not "conduct . . . the affairs of an enterprise through a pattern of racketeering activity," it could not have found him guilty of "assault . . . with a dangerous weapon in aid of racketeering activity." App. at 500, 503 (Verdict Form). "We apply *de novo* review to this purely legal question of statutory interpretation." *Lee v. Ashcroft*, 368 F.3d 218, 221 (3d Cir. 2004).

---

[3] In his reply brief, Blyden challenges the indictment, arguing that it "did not adequately inform [him] of the charge . . . , [and] was otherwise textually defective." Reply Br. at 6. Because Blyden failed "to set forth th[is] issue[] . . . and to present an argument in . . . [his] opening brief," he "has abandoned and waived th[is] issue on appeal." *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993). Even without the waiver, Blyden's argument is unpersuasive.

4

Blyden's arguments fail. Conviction on Count One required that he "conduct[ed] or participate[d] . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Conviction on Count Three, by contrast, required no such pattern. *See* 18 U.S.C. § 1959(a) ("Whoever . . . for the purpose of . . . maintaining or increasing position in an enterprise engaged in racketeering activity . . . assaults with a dangerous weapon . . . any individual . . . shall be punished."). The jury could have found (and apparently did find), that Blyden assaulted Friday "for the purpose of . . . maintaining or increasing position in [the Mark-Blyden] enterprise," 18 U.S.C. § 1959(a), even without engaging in a pattern of racketeering activity. Because of the different elements of the crimes charged in Counts One and Three, conviction on Count One was not a prerequisite for conviction on Count Three.[4]

### III.

Blyden next contends that the District Court erred in declining to pose *voir dire* questions he proposed regarding whether jurors could be impartial even though the "evidence in this case may reference the discharge of firearms[,] . . . illegal drugs[,] . . . [and] dog fighting." App. at 136-37. The Court questioned the jurors about their ability to be fair and follow the law, but Blyden argues that "[b]ecause of the prevalence of guns

---

[4] Blyden argues also that the enterprise's pattern of racketeering activity did not span a sufficient time period. However, as explained above, no such pattern, of whatever length of time, is required under 18 U.S.C. § 1959(a). Also, to the extent Blyden argues that the verdict was inconsistent, we note that this is not a basis for acquittal because "an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." *United States v. Powell,* 469 U.S. 57, 66 (1984).

locally and the hot topic of dog fighting nationally, . . . questions to obtain the thoughts of prospective jurors in advance of trial should have been posed." Reply Br. at 8-9.

However, we "review the district court's conduct of *voir dire* for abuse of discretion," *Butler v. City of Camden*, 352 F.3d 811, 815 n.4 (3d Cir. 2003), and "[g]enerally, a district judge need not pursue any specific line of questioning." *Waldorf v. Shuta*, 3 F.3d 705, 710 (3d Cir. 1993). Indeed, "district courts have been awarded ample discretion in determining how best to conduct the voir dire." *Id.* Here, the Court asked if the jurors had any relationship with any counsel, defendant, or witness, if they knew about the case, if they or a family member had been involved with the criminal justice system, and if any of the foregoing would prevent them from deliberating fairly. These questions were sufficiently "probative on the issue of impartiality," *id.*, and so the Court did not abuse its discretion in declining to pose Blyden's specific questions.

IV.

Blyden next argues that the District Court erred in failing to give jury instructions he proposed concerning the credibility of testimony from paid informants, immunized witnesses, and accomplices. "The District Court's refusal to give a requested jury instruction is reviewed for abuse of discretion." *United States v. Weatherly*, 525 F.3d 265, 269-70 (3d Cir. 2008). "A court errs in refusing a requested instruction only if the omitted instruction is correct, is not substantially covered by other instructions, and is so important that its omission prejudiced the defendant." *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999).

The District Court instructed the jury, *inter alia*, as follows:

6

> You've heard testimony from some witnesses who either received benefits from the government in connection with this case or were involved in the commission of offenses related to the crimes against the defendants. You may give the testimony of those witnesses such weight as you feel it deserves, keeping in mind that such testimony must be considered with greater caution and care than that of an ordinary witness.

App. at 2003, 2007. This "substantially covered" Blyden's requested instructions, *Davis*, 183 F.3d at 250, and so the District Court did not abuse its discretion when it declined to give the exact instructions Blyden sought.

V.

Finally, Blyden takes issue with his sentence. We review sentences for abuse of discretion, *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc), and "appellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" *Gall v. United States*, 552 U.S. 38, 46 (2007). Part of this review is "ensur[ing] that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . ." *Id.* at 51.

Blyden contends that his sentence was procedurally unreasonable because the District Court erred in determining his base offense level under the Sentencing Guidelines. Section 2E1.3(a) of the Guidelines provides that the base offense level for "Violent Crimes in Aid of Racketeering Activity" is "(1) 12; or (2) the offense level applicable to the underlying crime or racketeering activity." Application Note 1 provides that "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." U.S.S.G. § 2E1.3 app. n.1.

7

The Probation Office and the District Court calculated a Guidelines range of 63 to 78 months, resulting from a total offense level of 26 and a criminal history category of I. The total offense level was calculated starting from a base offense level of 14, which was chosen because Blyden's underlying conduct violated V.I. Code Ann. tit. 14, § 297(2);[5] the most analogous federal offense was assault within a territorial jurisdiction of the United States, 18 U.S.C. § 113(a)(3);[6] and the corresponding Guideline was U.S.S.G. § 2A2.2, because "[a]ggravated assault" is one "involv[ing] . . . a dangerous weapon with intent to cause bodily injury." U.S.S.G. § 2A2.2 app. n.1.

Blyden contends that his base offense level should have been 12 because of "the clarity provided by reference to Base Offense Level 12" in U.S.S.G. § 2E1.3(a)(1). Appellant's Br. at 32. This argument ignores § 2E1.3(a)'s specific provision that the greater of 12 or the offense level applicable to the underlying crime be applied. Blyden argues in the alternative that, under § 2E1.3(a)(2), his "'underlying crime' is assault with a dangerous weapon, [which is] specifically referenced in 18 U.S.C. § 1959(a)(3)," Appellant's Br. at 33, and so § 2E1.3(a)(1)'s base offense level of 12 still controls. This argument ignores Application Note 1 of § 2E1.3, which provides that "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal

---

[5] V.I. Code Ann. tit. 14, § 297(2) provides that "[w]hoever, under circumstances not amounting to an assault in the first or second degree[,] . . . assaults another with a deadly weapon . . . shall be . . . imprisoned not more than 5 years."

[6] 18 U.S.C. § 113(a)(3) provides that "[w]hoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault . . . with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, [shall be punished] by a fine under this title or imprisonment for not more than ten years, or both."

offense is to be used," and Blyden gives us no reason to question the selection of 18 U.S.C. § 113(a)(3) as the most analogous federal statute.

Blyden also contends that he should have been granted a minimal or minor role reduction because he was present for the Friday shooting but did not pull the trigger. "[W]here [a] district court's denial of a downward adjustment . . . rests on factual determinations, we review for clear error." *United States v. Isaza-Zapata,* 148 F.3d 236, 237 (3d Cir. 1998).

The Sentencing Guidelines provide that an offense level may be reduced by four levels "[i]f the defendant was a minimal participant in any criminal activity," U.S.S.G. § 3B1.2(a), and may be reduced by two levels "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). "Minimal participants" are "plainly among the least culpable of those involved in the conduct of a group," U.S.S.G. § 3B1.2 cmt. n.4, and a "minor participant" is "a defendant . . . who is less culpable than most other participants but whose role could not be described as minimal." *Id.* cmt. n.5.

Blyden's role in the attack on Friday cannot be described as "minimal" or "minor." Friday testified that, prior to the assault, Blyden sought him out because he owed money to Mark, and Friday's aunt testified that Blyden told her that Friday owed money to Mark and threatened to harm Friday. In addition, Blyden's ex-girlfriend stated that, on the night of the shooting, she saw Blyden and Mark talking. "And I saw Mr. Mark hand Mr. Blyden a weapon . . . [a]nd I heard Mr. Blyden state, 'Don't worry about it. I'll deal with it. I'll take the rap for it.'" App. at 1037-38. Given that Blyden sought to collect money Friday purportedly owed to Mark, threatened harm to Friday if the

9

money were not paid, was present for the shooting, and offered to cover it up, the District Court did not clearly err in finding Blyden ineligible for a role reduction.

\* \* \* \* \*

In light of the foregoing, we affirm the judgment of the District Court.