**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2450
_____

UNITED STATES OF AMERICA

v.

JACE CLENDINEN, SR.,
Appellant

_____

On Appeal from the District
Court of the Virgin Islands
(No. 14-cr-00050-001)
District Judge:  Honorable Curtis V. Gomez

Argued: December 13, 2016

Before:  CHAGARES, JORDAN, and HARDIMAN, Circuit Judges.

(Filed: June 22, 2017)

TRESTON E. MOORE (ARGUED)
Moore Dodson & Russell
5035 (14A) Norre Gade
P.O. Box 310
St. Thomas, VI 00802

     *Counsel for Appellant*

EVERARD E. POTTER, I (ARGUED)
Office of United States Attorney
5500 Veterans Building, Suite 260
United States Courthouse
St. Thomas, VI 00802

*Counsel for Appellee*

_____

OPINION[*]

_____

CHAGARES, <u>Circuit Judge</u>.

Jace Clendinen appeals from a jury verdict that found him guilty of violating 18 U.S.C. § 922(k). We will affirm the District Court's judgment of conviction.

I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts.

On September 1, 2014, Virgin Islands police officers seized a firearm in Clendinen's possession during a celebration called J'ouvert in the Smith Bay area of St. Thomas. Clendinen was indicted on November 6, 2014 on one count of possession of a firearm with an obliterated serial number, 18 U.S.C. § 922(k).

Trial commenced on February 9, 2015. During <u>voir dire</u>, the District Court asked the panel of prospective jurors a number of questions regarding their knowledge of and relationship to the attorneys, witnesses, and defendant in the case. The District Court also asked the prospective jurors, "Have you, a close friend or a family member been involved in the criminal justice system, either as a victim, a defendant or a witness?" Joint Appendix ("J.A.") 53.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Clendinen's counsel requested that the District Court ask the venire panel whether "anyone on the jury ha[s] any extreme problem with firearms." J.A. 86. Clendinen's counsel had previously submitted a similar voir dire question in writing. J.A. 13 ("8. The evidence in this case will reference firearms. Do any of you have such strong opinions for, or against guns that you would not be able to be a fair and impartial juror in this case?"). The District Court declined to ask that question, noting that its previous questions "adequately screen[ed]" the panel. J.A. 86–87.

The District Court next asked the prospective jurors whether any of them had read or heard anything regarding Clendinen's firearms charge. Prospective Juror 62 answered yes. At sidebar, the prospective juror explained that she recognized the defendant's last name but could not remember details. The prospective juror added, "But if it regards a firearm, I have had six friends murdered here, and I don't think I'm very impartial when it comes to firearms."[1] J.A. 87–89. When the judge asked Prospective Juror 62 whether she would be able to follow the judge's instructions on the law, the juror replied, "I'm not sure if I could if it involves an unlicensed firearm." J.A. 89–90. Prospective Juror 62 was struck from the jury. After the jury was sworn in, the District Court gave preliminary instructions that the jurors must "follow that law whether you agree with it or not." J.A. 101.

At trial, the jurors heard testimony from six members of the Virgin Islands Police Department, one officer from the Bureau of Alcohol, Tobacco, Firearms, and Explosives,

---

[1] Prospective Juror 62 had not answered "yes" to the District Court's previous question about friends or family being the victim of a crime.

Clendinen, and two of Clendinen's companions at the J'ouvert celebration. The District Court instructed the jury both before and after the attorneys' closing statements. In the charge to the jury before the closings, the District Court stated:

> Before we have closing arguments, however, there is one instruction that I wanted to read to you. I may have left out a line or two, and so I want to make sure that we cover all bases with that.
>
> The terms "know," "knew," "knowingly" as used in these instructions describe the state of mind of the defendant. Those terms mean that the defendant was conscious and aware of the defendant's actions.
>
> Whether or not a defendant had this knowledge is a question of fact to be determined by you on the basis of all the evidence. An act is done knowingly only if it is done purposely and deliberately, and not because of accident, mistake, negligence, good faith or other innocent reason. You can consider any statements made and acts done or omitted by a defendant as well as other facts, inferences and circumstances in evidence which indicate the defendant acted knowingly.

J.A. 303–04.

> In jury instructions provided after closing statements, the District Court stated,
>
> You are to perform this duty [to try the issues of fact] without bias, sympathy or prejudice. Under no circumstances, then, may your deliberations be affected or diverted by any appeals to bias, passion, or prejudice, nor influenced by any pity or sympathy in favor of either side . . . . [I]t is your duty to give an absolutely fair and impartial verdict.

J.A. 341–42.

> The jury returned a verdict of guilty against Clendinen. He timely appealed.

## II.

The District Court had jurisdiction over this case under 48 U.S.C. § 1612 and 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. Clendinen's challenges on appeal stem from the voir dire and jury instructions given at trial. "We review the district

4

court's conduct of voir dire for abuse of discretion." Butler v. City of Camden, City Hall, 352 F.3d 811, 814 n.4 (3d Cir. 2003). "We exercise plenary review in determining 'whether the jury instructions stated the proper legal standard.' We review the refusal to give a particular instruction or the wording of instructions for abuse of discretion. Finally, 'when we consider jury instructions we consider the totality of the instructions and not a particular sentence or paragraph in isolation.'" United States v. Leahy, 445 F.3d 634, 642 (3d Cir. 2006) (quoting United States v. Coyle, 63 F.3d 1239, 1245 (3d Cir. 1995)).

## III.

## A.

Clendinen contends that the District Court erred by failing to ask prospective jurors his proposed voir dire Question 8 regarding whether any of them harbored strong opinions about firearms. He argues that the failure to ask the question impeded his right to an impartial jury and his counsel's ability to exercise peremptory challenges.

District courts have "wide discretion . . . in . . . areas of inquiry that might tend to show juror bias." Mu'Min v. Virginia, 500 U.S. 415, 427 (1991). "[A]n abuse of discretion will only be found where the district court's voir dire examination is 'so general that it does not adequately probe the possibility of prejudice.'" Butler, 352 F.3d at 815 (quoting Waldorf v. Shuta, 3 F.3d 705, 710 (3d Cir. 1993)). "Generally, a district judge need not pursue any specific line of questioning on voir dire." Waldorf, 3 F.3d at 710.

5

We conclude that the District Court did not abuse its discretion in declining to ask Clendinen's specific proposed question regarding biases about firearms. While such a question may have elicited more information about jurors, we are also mindful that trial judges cannot reasonably cover every theoretical inquiry and that voir dire is not limitless. See United States v. Jones, 566 F.3d 353, 360–61 (3d Cir. 2009) (noting that there is "never a perfect . . . scenario" in voir dire). Here, the District Court already inquired as to prospective jurors' experiences with the criminal justice system, including being a victim or witness of a crime or having close friends or family members who were victims or witnesses. The District Court also inquired as to the prospective jurors' knowledge of the firearms charge against Clendinen. Thus, we do not find that it was an abuse of discretion for the District Court to decline to ask an additional question as to "strong opinions for, or against guns."[2]  J.A. 86–87.

Moreover, Clendinen has not demonstrated that any alleged harm suffered as a result of inadequate voir dire was prejudicial in light of the District Court's instructions to the jury during the trial, including the jury charge. Rosales-Lopez v. United States, 451

[2] Clendinen makes much of the fact that Prospective Juror 62 alerted the District Court to her own biases about firearms because six of her friends had been murdered. While we do not know why Prospective Juror 62 did not speak up when asked about friends who were victims of a crime, the fact that she eventually disclosed bias about firearms does not mean the judge should have asked an additional question to other prospective jurors. By determining that questions posed to the venire panel had already "adequately screen[ed]" for bias related to firearms, the District Court made its "own evaluations of demeanor evidence and of responses to questions." Butler v. City of Camden, City Hall, 352 F.3d 811, 815 (3d Cir. 2003) (quoting Rosales-Lopez v. United States, 451 U.S. 182, 188–89 (1981)). Based on the record before us, we decline to disturb that determination. The Court does note that providing prospective jurors with information about the criminal charges at the outset of voir dire may help contextualize their answers to questions about their ability to be impartial.

6

U.S. 182, 190 (1981) (noting that "substantial indications of the likelihood" of bias are required to find constitutional error). First, Clendinen "does not attempt to suggest that any particular juror was biased." Jones, 566 F.3d at 360–61. Second, even if any empaneled juror had prior beliefs as to the possession of firearms, Clendinen does not explain how such a belief would impair the juror's ability to consider Clendinen's culpability impartially. Clendinen's defense did not depend on any opinion "for or against guns." Instead, his defense was that he was a "good Samaritan" who picked up the gun in order to return it to the police to prevent it from getting into the wrong hands. In rendering a verdict against him, the jury determined that this was not true. It is not clear how such a verdict would have been biased by any unexpressed opinions as to gun ownership. Third, the District Court provided additional instructions to the jury to refrain from making judgments based on personal feelings, telling jurors that they must "follow the law whether you agree with it or not," J.A. 101, and that jurors have a duty to proceed "without bias, sympathy or prejudice," J.A. 341. "Jurors are presumed to follow the instructions they are given." United States v. Claxton, 766 F.3d 280, 299 (3d Cir. 2014). In the absence of evidence to the contrary, the District Court did not abuse its discretion in declining to ask the defense's proposed voir dire Question 8.

B.

Clendinen also contends that the District Court erred by failing to instruct the jury on the defense of justification and by failing to give a standalone instruction on good faith. We disagree.

7

An instruction on the defense of justification is only appropriate if there is evidence adduced at trial that the defendant

> (1) . . . was under unlawful and present threat of death or serious bodily injury;
> (2) . . . did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;
> (3) . . . had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and
> (4) there is a direct causal relationship between the criminal action and the avoidance of the threatened harm.

United States v. Alston, 526 F.3d 91, 95 (3d Cir. 2008) (quoting United States v. Paolello, 951 F.2d 537, 540 (3d Cir. 1991)). There was no evidence that Clendinen was "under unlawful and present threat of death or serious bodily injury," id., when he possessed the gun with an obliterated serial number. Rather, the account of events as described by Clendinen himself was that he was at a festival with friends when he found the gun on the ground. J.A. 242. When asked whether he had any concern for his safety at that time, Clendinen replied that he "was hoping no one saw me." J.A. 242. Even taking Clendinen's claim as true — that he was waiting to "safely and privately give the weapon to law enforcement," Clendinen Br. 13 — such a defense is not one of justification because there is no evidence that any perceived threat to his safety was from an unlawful source or was a threat of death or serious bodily injury. In the absence of any evidence supporting a justification defense, the District Court did not err in declining to instruct the jury on that defense.

Clendinen's contention that the District Court erred by declining to give a standalone instruction on good faith is also without merit. In evaluating jury instructions,

8

we look to the "totality of the instructions." Leahy, 445 F.3d at 642 (quoting Coyle, 63

F.3d at 1245). Here, the District Court instructed the jury on good faith. It stated:

> Whether or not a defendant had this knowledge is a question of fact to be determined by you on the basis of all the evidence. An act is done knowingly if and only if it is done purposely and deliberately, and not because of accident, mistake, negligence, good faith or other innocent reason.

J.A. 304. We see no deficiency in discussing the good faith defense in the context of the

knowledge requirement and conclude that the decision not to issue a standalone

instruction on good faith was not an abuse of discretion. See United States v. Gross, 961

F.2d 1097, 1103 (3d Cir. 1992) (holding that because "a jury finding of good faith is

inconsistent with a finding that the defendant acted knowingly and willfully . . . failure to

give the instruction on the good faith defense did not constitute an abuse of discretion"

when the court gave "a detailed instruction on the elements of the crime," including

knowledge and willfulness).

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of

conviction.

9