**Sylvester MILLER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 312,2005.**

Supreme Court of Delaware.

Submitted: Feb. 8, 2006.

Decided: March 9, 2006.

---

David J. Facciolo, Minster & Facciolo LLC, Wilmington, DE, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

STEELE, Chief Justice.

Police arrested and a New Castle County grand jury indicted Sylvester Miller for Rape First Degree and Continuous Sexual

Abuse of a Child for sexually assaulting his daughter, Alicia Miller. On March 28, 2005, a trial jury returned a guilty verdict on six counts of Rape First Degree and one count of Continuous Sexual Abuse of a Child.[1] Miller now appeals these convictions. Miller raises eight claims of error: (1) the trial judge abused his discretion by refusing to allow *voir dire* on whether individual prospective jurors would give more weight to a police officer's testimony than that of other witnesses; (2) the trial judge erred by refusing to instruct the jury on the lesser included offense of Unlawful Sexual Contact; (3) the trial judge abused his discretion by denying defense counsel's proposed Conduct of the Jury Instruction which focused on "not surrendering your opinion for the purpose of a verdict;" (4) the trial judge abused his discretion by denying Miller's motion *in limine* in which Miller sought to redact a portion of a videotaped police interview with Miller where the police officer made unsupported suggestions that Miller may have been unable to recall that he had sexually assaulted Alicia because he was using marijuana or abusing alcohol; (5) the trial judge abused his discretion by denying Miller's Motion for a Mistrial when the victim gave an unresponsive answer to a prosecutor's question and made reference to an inadmissible earlier sexual assault; (6) the trial judge abused his discretion by admitting Alicia's handwritten statement describing the abuse; (7) the trial judge abused his discretion by limiting the cross-examination of Alicia when he refused to allow defense counsel to ask Alicia questions about her relationship with Miller's girlfriend; and (8) the trial judge unfairly commented on the evidence in his jury instruction when he linked the six counts of Rape to specific "allegations" made by Alicia. Because we find that the trial

judge acted within his discretion and that any errors he made were harmless beyond a reasonable doubt, we affirm.

## I. Facts

Alicia Miller visited her stepmother in the summer of 2004 and informed her stepmother that her father, Sylvester Miller, had sexually abused her. Alicia's stepmother contacted the Florida police. The Florida Police asked Alicia to provide a handwritten statement of the events and contacted Delaware authorities. Delaware police then investigated resulting in Miller's arrest and indictment.

At Miller's trial both Alicia and Anthony Miller, Miller's son, testified against him. Alicia testified to six specific instances when her father raped or sexually abused her: (1) a time when her father forced her to have sexual intercourse the night before Christmas; (2) a time when Alicia's father forced her to have sexual intercourse and her brother opened the bedroom door; (3) a time when her father dragged her into his bedroom and forced her to perform oral sex; (4) the first time her father forced her to have anal sex; (5) the summer after she turned 14 and her father, again, forced her to have anal sex; and (6) a time when her father forced her to have sexual intercourse before she left for Florida.

Anthony corroborated Alicia's testimony. Anthony saw his father enter Alicia's bedroom late at night and during those times he heard bedsprings "creaking" and Alicia saying "no" and "stop." Anthony also testified to an occasion when he walked into Alicia's bedroom and saw Miller under the sheets with Alicia. Finally, Anthony explained that his sister had told him about the abuse two years before the trial but he

---

1. During trial, the prosecutor dropped two of the eight counts in the indictment.

never mentioned anything because he was confused about what action he should take.

Miller never testified, but the jury had the opportunity to view Miller's videotaped police interview. During the police interview, Miller denied all of Alicia's allegations. Despite Miller's repeated denials in the videotape and other evidence suggesting that Alicia and Anthony had motives to lie,[2] the jury found Miller guilty of six counts of Rape First Degree and one count of Continuous Sexual Abuse of a Child. The trial judge sentenced Miller to the mandatory minimum fifteen years at Level V incarceration for each Rape count and two years Level V incarceration followed by probation for Continuous Sexual Abuse of a Child. Miller now appeals that verdict.

## II. Eight Claims of Error

We now address Miller's eight claims of error.

### A. The trial judge allegedly abused his discretion by refusing to ask during *voir dire* whether the jury members would give more weight to a police officer's testimony than to any other testimony.

Before trial, Miller submitted a proposed list of *voir dire* questions. One of the questions reads as follows:

Police officers may testify at trial. Would the fact that a police officer testified affect your ability to render a fair and impartial verdict in this case?

Alternate version: Can you give the same weight to a Police Officer's testimony as to any other fact witness?

In a sidebar conversation before beginning jury selection, the trial judge explained to defense counsel why he was not going to ask the proposed question:

I think this question has particular relevance when the case is one that's kind of been developed by police conduct, meaning they've been active participants and they become the real—it's their issue of credibility . . . . I think in this case what they're going to be testifying to is either events or statements made by others and so I'm not finding it as critical here. You have in the jury questionnaire information concerning whether or not they have any family or friends who are in the law enforcement field, so I don't think it's necessary in this case. . . .

During *voir dire*, the clerk asked the prospective jurors, "Do you have any biases or prejudice, either for or against the State or the defendant?" The clerk also asked if the prospective jurors knew any of the potential witnesses, one of whom was Detective Joe Szcerba. One of the prospective jurors came forward. When the trial judge asked what prompted her to come forward she indicated that her husband was a New Castle County Police Officer. The trial judge then determined that the prospective juror knew Joe Szcerba as "a regular officer", but that she and her family did not socialize with him on a regular basis. The trial judge next asked whether the fact that the prospective juror's husband was a New Castle County Police Officer would affect her ability to fairly and impartially consider the evidence. She responded, "possibly." Rephrasing the question the trial judge asked: "would you tend to give greater credence and testimony to the police officer because of the role that they have?" The prospective juror responded in the affirmative. The trial judge clarified this

<hr>

2. Both Alicia and Anthony agreed that they were embarrassed by their father's accent and the way he dressed. Moreover, Alicia and Anthony both expressed desires to live with their stepmother in Florida.

response by asking, "If there was a conflict between the testimony of a lay witness and an officer, would you give the benefit to the officer?" The prospective juror said that she would; whereupon the trial judge excused her.

Initially, the trial judge ruled that the police officers' testimony would not be that "critical" because the police would be testifying to "events or statements" made by others. The trial judge knew that counsel had the jury questionnaire responses and could determine from them whether any prospective jurors had family or friends who were law enforcement officers. Understandably, the trial judge believed those responses would allow counsel to exercise a peremptory challenge should they question a prospective juror's objectivity. After the juror came forward in response to the question about whether any member of the *venire* might know a prospective witness, the trial judge asked substantially the same question Miller proposed to ask the entire *venire*. The trial judge then excused that prospective juror because she claimed that she would find a police officer more credible than a lay witness (even though the police officer's testimony was not "critical" in this case.) We address below whether this methodology sufficiently identified prospective jurors who would tend to believe a police officer over any other witness and whether in this case such a juror on the panel ultimately selected might have unfairly prejudiced Miller.

Miller appeals the trial judge's initial ruling claiming that the trial judge abused his discretion by "refusing to grant *voir dire* as to extra weight jurors might give to police officer testimony." He alleges

that the "[t]he failure to allow this *voir dire* coupled with the police officer's improper questions on the videotape exacerbated the unfairness of this trial, and violated the defendant's due process rights."

 It is well-settled that "the extent of a *voir dire* examination of prospective jurors and the questions to be permitted lay within the broad discretion of the trial judge."[3] "The exercise of that discretion is restricted only by constitutional requirements and the essential demands of fairness."[4] Accordingly, any limitation the trial judge imposes on the defendant's right to have prospective jurors questioned "will not constitute an abuse of discretion unless the broad discretion reposed in the trial judge has been clearly abused to the prejudice of the defendant."[5]

We have never before squarely addressed the issue of whether the trial judge must always ask the jury *venire* whether they would give more weight to or assign more credibility to a police officer's testimony than they would any other fact or opinion witness. Miller cites only *Gray v. State*[6] to support the proposition that the trial judge abused his discretion by not automatically doing so in this case. According to Miller, in *Gray* we "presumed the relevance of the question" that the trial judge denied in this case. In *Gray*, like here, the defendants claimed that the trial judge abused his discretion by failing to ask prospective jurors certain questions relating to jurors' potential biases because the case involved several inflammatory aspects. In concluding that the trial judge did not abuse his discretion, we explained the procedure he followed in conducting *voir dire* and noted that he asked "Would

---

3. *Parson v. State*, 275 A.2d 777, 780 (Del. 1971).

4. *Ortiz v. State*, 869 A.2d 285, 292 (Del.2005)

5. *Parson*, 275 A.2d at 781.

6. 441 A.2d 209 (Del.1981).

you give the testimony of a police officer more credence than others merely because he is a police officer?"[7] In *Gray*, despite his paring-down of the questions submitted from the 83 questions the defendants submitted to the 23 questions he actually used, the trial judge "did not merely go through the motions; rather he conducted an examination designed to elicit answers which provide an objective basis for his evaluation" of "whether [each] prospective juror can render an impartial verdict upon the evidence and the law."[8]

*Whalen v. State,*[9] is also relevant to the issue here. In *Whalen*, the defendant submitted 58 questions to the trial judge for preliminary submission to the entire jury *venire*. The trial judge rejected all questions the defendant requested, including question 21 of 58: "Will you give the testimony of a ·police officer more credence than that of other witnesses merely because he is a police officer."[10] The trial judge did, however, ask the prospective jurors, among other things, whether they were related to any police officer, had any friends in the police department or law enforcement agencies, or if their jobs caused them to work with the Delaware State Police.[11] We held that the trial judge properly exercised his discretion and, therefore, rejected the defendant's contention that the trial judge abused that discretion by declining to submit the defendant's requested questions to the panel.[12]

Neither *Gray* nor *Whalen* provide clear guidance to the question of whether a bright line rule should apply to questions for the *venire* when police officer testimony may be contradicted at trial by civilian witnesses. A leading case on this subject in the federal system is *Brown v. United States.*[13] A jury convicted the defendant in *Brown* of assault with intent to commit robbery for attacking a victim and taking property from his person. Two military police officers observed the incident, gave chase, and captured the defendant. Their testimony constituted the bulk of the government's case.[14]

Before jury selection, the defendant requested that the trial judge direct the following question to the jury *venire:* "Would you give greater credence to the testimony of a law enforcement officer merely because he is an officer as compared to any other witness?"[15] The trial judge denied the request. In reversing, the D.C. Circuit explained that "[a]lthough the trial court possesses a broad discretion as to the question to be asked on voir dire, the exercise of that discretion is subject to the essential demands of fairness."[16] The Court then set forth the general rule that:

> when important testimony is anticipated from certain categories of witnesses, whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination is not

7. *Id.* at 219.

8. *Id.* at 219.

9. 434 A.2d 1346 (Del.1980).

10. *Id.* at 1348, 1366, Appendix 2.

11. *Id.* at 1368–1369, Appendix 3.

12. *Id.* at 1348.

13. 338 F.2d 543 (D.C.Cir.1964). *See Butler v. City of Camden,* 352 F.3d 811 (3d Cir.2003) (describing *Brown* as a leading case).

14. *Brown,* 338 F.2d at 544.

15. *Id.*

16. *Id.* This is the same rule that applies in Delaware. *See Supra* pg. 943.

only appropriate but should be given if requested.... [17]

Applying the general rule, the Court concluded that:

> Responses to the requested query might have supplied the defense counsel, or indeed, the prosecutor, with relevant and useful information for exercising peremptory challenges or challenges for cause. We hold that ... failure to inquire of the jury panel as requested regarding possible predilections concerning police testimony was reversible error in this case [18]

In many cases, however, "[f]ailure to make appropriate inquiry, when requested, does not necessarily require reversal; the issue turns on the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole." [19] Several years later, the Ninth Circuit elaborated on this (essentially) harmless error rule by setting forth a four factor test to determine whether a trial judge's error in *voir dire* by failing to ask "the question of whether prospective jurors would be unduly influenced by the testimony of a law enforcement officer" served to deny a defendant the right to have his claims decided by a fair and impartial jury.[20] The question of whether the error is reversible hinges on:

1) The importance of the government agent's testimony to the case as a whole;

2) The extent to which the question concerning the venireperson's attitude toward government agents is covered in other questions on voir dire and on the charge to the jury;

3) The extent to which the credibility of the government agent-witness is put into issue; and

4) The extent to which the testimony of the government agent is corroborated by non-agent witnesses.[21]

Over the years this "Brown–Baldwin" rule [22] has become the majority rule among the federal circuits.[23] Indeed, many State courts have adopted a rule similar to that in *Brown*.[24] We have discussed *Brown*

---

**17.** *Id.* at 545.

**18.** *Id.* at 545.

**19.** *Id.*

**20.** *United States v. Baldwin,* 607 F.2d 1295 (9th Cir.1979).

**21.** *Id.* at 1298.

**22.** *See United States v. Lancaster,* 96 F.3d 734 (4th Cir.1996) (*en banc*) (Murnaghan, Circuit Judge, dissenting) (referring to the Brown–Baldwin rule).

**23.** *See Butler v. City of Camden,* 352 F.3d 811 (3d Cir.2003) ("The majority of federal courts of appeals to have passed on this question have held that the district court may, in certain circumstances, commit error when it fails to examine the jury pool for potential law enforcement bias when requested by counsel.") (*citing Brown v. United States,* 338 F.2d 543 (D.C.Cir.1964); *United States v. Victoria–*

*Peguero,* 920 F.2d 77 (1st Cir.1990); *United States v. Gelb,* 881 F.2d 1155 (2d Cir.1989); *United States v. Baldwin,* 607 F.2d 1295 (9th Cir.1979); *United States v. Spaar,* 748 F.2d 1249, 1254 (8th Cir.1984); *United States v. Espinosa,* 771 F.2d 1382 (10th Cir.1985) *but see United States v. Lancaster,* 96 F.3d 734 (4th Cir.1996) (en banc) (split panel), *overruling United States v. Evans,* 917 F.2d 800 (4th Cir.1990); *United States v. Lawes,* 292 F.3d 123 (2d Cir.2002) (split panel)).

**24.** *See e.g., Nodd v. State,* 549 So.2d 139, 147 (Ala.Crim.App.1989) ("We hold that, where the State's case consists primarily of police testimony and that testimony is crucial in establishing the State's case, the defense has a right to inquire, either through counsel or the trial judge, whether any member of the jury venire might be more, or less, inclined to credit the testimony of a police officer simply because of his or her official status. The trial judge's refusal of such requested inquiry will constitute an abuse of discretion when the

once before. In *Parson v. State* [25] we considered, among other things, whether the trial judge committed reversible error *by not excusing for cause* certain members of the *venire* who stated that they would tend to believe the testimony of a police officer more readily than that of a lay-witness. [26] There, three prospective jurors, two of whom were actually seated on the jury and one of whom the defendant peremptorily challenged, "stated in substance that they would tend to believe more readily a police officer when he is testifying as to matters for which he is trained, and which he learned about in the course of the performance of his duty." [27] All of the prospective jurors, however, testified that if the "testimony concerned was not directly related to or growing out of the performance by the policeman of his duties as an officer that they would treat his testimony as that of any other witness." [28] The trial judge denied the defendant's challenge for cause. [29]

The defendant in *Parson* relied on *Brown* [30] to support his argument. We concluded that *Brown* was inapplicable and noted that *Brown* held only that "it was reversible error not to allow the questioning of a prospective juror upon the subject of whether or not he would give greater weight toward policemen's testimony." [31] We continued by noting that the Court in *Brown* did not "rule upon the question of whether or not the witnesses answering in the affirmative should be excused for cause. In point of fact, the questions were allowed in the case at bar and, therefore, there is no violation of the holding in ... *Brown.*" [32] Accordingly, we held there was no error in the refusal of the trial judge to dismiss the jurors for cause. [33]

The rationale articulated in *Brown* provides a substantial reason to adopt the Brown–Baldwin rule in Delaware, namely that "responses to the requested query might have supplied the defense counsel, or indeed, the prosecutor, with relevant and useful information for exercising peremptory challenges." [34] This is true even

---

issue has not been adequately covered in other questions on voir dire or in the judge's charge to the jury."); *State v. Hill,* 196 Conn. 667, 673, 495 A.2d 699 (1985) (citing *Brown* ) ("When important testimony is anticipated from certain witnesses whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination should be permitted."); *Langley v. State,* 281 Md. 337, 349, 378 A.2d 1338 (1977) ([I]n a case such as this, where a principal part of the State's evidence is testimony of a police officer diametrically opposed to that of a defendant, it is prejudicial error to fail to propound a question such as that requested in this case. However, in the words of *Brown,* we suggest that "the phrasing of the court's inquiry should include whether any juror would tend to give either more or less credence [merely] because of the occupation or category of the prospective witness"); *State v. Hyzer,* 729 S.W.2d 576, 579 (Mo.Ct.App.1987); *Commonwealth v. Futch,* 469 Pa. 422, 366 A.2d 246 (1976).

25. 275 A.2d 777 (Del.1971)

26. *Id.* at 782.

27. *Id.*

28. *Id.*

29. *Id.*

30. He also relied upon *Sellers v. United States,* 271 F.2d 475 (D.C.Cir.1959) a D.C. Circuit Court of Appeals case cited and discussed in *Brown.*

31. *Parson,* 275 A.2d. at 782.

32. *Id.*

33. *Id.*

34. *Brown,* 338 F.2d at 545; *See Parson,* 275 A.2d at 780–781 ("[*Voir dire*] aids the State and the defendant by eliciting facts upon which they can exercise intelligently rights to peremptory challenges.")

if, as happened in *Parson*, the trial judge does not abuse his discretion by failing to excuse for cause a prospective juror who answers affirmatively that he will give police officers' testimony greater weight than that of lay witnesses.

■ Thus we join the majority of the federal circuits in concluding that "where government [law enforcement] agents are apt to be key witnesses, the trial court, particularly if seasonably requested, should ordinarily make inquiry into whether prospective jurors are inclined to have greater faith in the agents' testimony merely by virtue of their official positions." [35] Moreover, we will apply the harmless error analysis of the *Baldwin* court to determine whether the failure to do so served to deny the defendant the right to have his claims decided by a fair and impartial jury, again, examining:

(1) The importance of the government agent's testimony to the case as a whole;

(2) The extent to which the question concerning the venireperson's attitude toward government agents is covered in other questions on voir dire and on the charge to the jury;

(3) The extent to which the credibility of the government agent-witness is put into issue; and,

(4) The extent to which the testimony of the government agent is corroborated by non-agent witnesses.[36]

When a party requests the trial judge to ask the *venire* if any member of the *venire* would "be more likely to believe the testimony of a police officer than the testimony of any other fact or opinion witness," the trial judge should address the *Baldwin* factors and rule accordingly.[37]

Assuming, for the sake of argument, that the trial judge erred here by refusing to ask the *venire* Miller's proposed question or a variation of the question proposed, we are satisfied that any error was harmless beyond a reasonable doubt. First, the police officer's testimony was not central to the State's case. Rather the case rested primarily on Alicia's testimony corroborated by the testimony of her brother. Second, the credibility of the police officer was not really an issue at trial; instead, consistent with the above, the credibility determinations related largely to the defendant's videotaped statement and Alicia's and Anthony's trial testimony. Third, the trial judge used the jury questionnaire to determine whether any prospective juror was related to or friends with a law enforcement officer. This ultimately resulted in the trial judge excusing a prospective juror whose husband was a police officer. Fourth, to the extent any corroboration was necessary—and it arguably was not—Alicia's testimony was sufficiently corroborated by Anthony's testimony. Examining all of the factors here, we conclude that even if there was error, it was harmless. Accordingly, Miller's claim on this issue must fail.[38]

**35.** *Butler v. City of Camden*, 352 F.3d 811, 817 (3d Cir.2003) (citations and quotation omitted).

**36.** *Baldwin*, 607 F.2d. at 1298; *Butler*, 352 F.3d at 817.

**37.** We recognize that the *Baldwin* test generally applies as a harmless error test when an appellate court is reviewing a trial judge's decision not to ask the "police officer credibil-

ity question" on *voir dire*. We also think that it provides useful guidance to a trial judge who must decide whether to ask the question in the first place. To the extent the trial judge has any doubt, however, he should err on the side of asking the proposed question.

**38.** To the extent that Miller argues that the officer used "misleading representation and techniques in questioning" him and that the

**B. The trial judge allegedly erred by denying a Lesser Included Offense Instruction.**

█ Miller requested that the trial judge instruct the jury on the lesser included offense of Unlawful Sexual Contact Second Degree. Miller suggested that, based on his statements to the police that he could only recall that he may have "hugged" or "rubbed" his daughter, a rational jury could have found him guilty of the lesser included offense of Unlawful Sexual Contact Second Degree. The trial judge disagreed and ruled that there was no basis in the record to convict Miller of the lesser included offense because "hugging" or "rubbing" another are not crimes in Delaware.

█ The prosecution or the defense is entitled to a lesser included offense instruction if the crime not charged is in fact a lesser-included offense, and if there is a rational basis in the evidence to convict the defendant of the lesser crime rather than the greater.[39] Both parties agree that Unlawful Sexual Contact Second Degree is a lesser included offense of Rape First Degree. The parties disagree about whether there was a rational basis in the record to convict Miller of Unlawful Sexual Contact Second Degree. We review *de novo* Miller's claim that there was a rational basis for the requested instruction.[40]

We conclude that there was no rational basis in the evidence to support a charge of Unlawful Sexual Contact Second Degree. The victim testified that Miller raped her vaginally, orally, and anally numerous times over several years. Miller, in his statement to the police, denied all of the victim's allegations, and stated that he had occasionally "hugged" or "rubbed" his daughter in bed. Based on these two accounts, the jury could have found that Miller raped his daughter numerous times or "hugged" or "rubbed" her. However, the trial judge found that neither "hugging" nor "rubbing" are crimes in Delaware. Therefore, the trial judge properly denied Miller's request for an instruction on Unlawful Sexual Contact Second Degree because the facts support only the crime of Rape First Degree.

**C. The trial judge allegedly abused his discretion by failing to give defense counsel's proposed Conduct of Jury Instruction.**

█ At the prayer conference, defense counsel requested that the trial judge give a particular "Conduct of Jury" instruction. Defense counsel suggested that a pattern instruction existed that contained language "something along the lines of you must not surrender your opinion solely for the purposes of reaching a verdict but must fairly listen to each of the comments of your fellow jurors." The trial judge explained that he used a different instruction "concerning jury deliberations." The trial judge ultimately used the following instruction:

Now, upon retiring to the jury room, I suggest that you carry on your discussions in an **orderly way and give every-**

---

failure to allow the *voir dire* question coupled with the "interrelated concerns raised on the videotape" violated his due process rights, we disagree. The officer was not a witness when asking questions on the videotape. The jury was not called upon to weigh her credibility. Accordingly, the proposed *voir dire* question is largely irrelevant to what the officer did or said on the videotape.

**39.** *See Lilly v. State,* 649 A.2d 1055, 1061 (Del.1994); *Ward v. State,* 575 A.2d 1156, 1159 (Del.1990).

**40.** *Capano v. State,* 781 A.2d 556, 628 (Del. 2001).

one an opportunity to express their views before taking a vote or attempting to decide the case. All the issues should be fully and fairly discussed and everyone should have a fair chance to be heard.

After the instructions, the trial judge excused the jury for deliberations. Before reaching a verdict, the jury sent three questions to the trial judge. One of the questions asked for a clarification of the term "reasonable doubt." After learning of this question, defense counsel again asked the trial judge for a particular "Conduct of Jury" instruction:

Your Honor, I was also wondering if the Court thinks that the instruction that you didn't feel we needed, when I raised it before, about the conduct of a jury might help them, because it sounds as if they are not clear whether they're getting close to being logjammed, or hung. And that's the one that talks about the reasonableness of your conscience but also trying to reach a verdict. It's in the standard instructions. I'm suggesting it at this point, because it seems like it touches on where they might be.

The trial judge again denied the request:

The language that the defense is suggesting is the language that kind of goes along with the *Allen* charge. So I don't think we are quite there yet.

Miller challenges the trial judge's denial of his proposed pattern "Conduct of Jury" instruction. The decision to give a particular jury instruction is within the sound discretion of the trial judge, and we will not reverse that decision absent an abuse of discretion.[41]

We have recognized that pattern jury instructions "are a most valuable resource and should be consulted in the first instance when the trial court is conducting a prayer conference and selecting the wording of its instructions."[42] We have also held, however, that pattern instructions are not mandatory because a defendant does not have a right to a particular jury instruction.[43] Rather, a defendant has an unqualified right to instructions that "correctly state the law and are reasonably informative and not misleading, judged by common practices and standards of verbal communication."[44] Therefore, we focus "not on whether any special words were used, but whether the instruction correctly stated the law and enabled the jury to perform its duty."[45]

Here, the instruction correctly stated the law and adequately guided the jury about how to conduct their deliberations. Further, not only did the trial judge's instruction correctly state the law and enable the jury to perform its duty, but the instruction also did not materially differ from Miller's proposed instruction. In sum, Miller simply quibbles over the denial of special words he preferred. We have consistently held that no particular form of words or phrases must be used in any instruction.

Moreover, the trial judge acted within his discretion by denying the second request for the instruction. Defense counsel suggested for a second time that the instruction was necessary because the jury

41. *Carter v. State*, 873 A.2d 1086, 1088 (Del. 2005).

42. *Bordley v. State*, 832 A.2d 1250 (Del.2003) (citing *Cabrera v. State*, 747 A.2d 543, 545 (Del.2000)).

43. *Id.*

44. *Id.* (citing *Sirmans v. Penn*, 588 A.2d 1103, 1104 (Del.1991)).

45. *Cabrera*, 747 A.2d at 545.

may have been "logjammed or hung." In fact, as the trial judge stated, the jury only wanted a clarification on the definition of "reasonable doubt" and gave no indication that they had questions about how they were to conduct their deliberations.

### D. The trial judge allegedly abused his discretion by denying Miller's motion *in limine* which sought to redact portions of Miller's videotaped police interview.

During trial, the prosecutor sought to introduce Miller's videotaped police interview. Defense counsel, however, objected, expressing concern over some of the police officer's statements while questioning Miller. Defense counsel wanted to redact a portion of the video where the police officer suggested that Miller might have not remembered raping his daughter because he might have been under the influence of alcohol or marijuana.[46] The prosecutor summarized the police officer's statement:

> In questioning the defendant, the detective says she—she's saying maybe he might have forgotten about this, maybe he might have been intoxicated and her line of question [sic] is maybe you came home, you were drunk, maybe you were high and you got—maybe you were drunk, maybe you smoked some pot and you got in bed and you didn't realize what you were doing.

The trial judge, after viewing the video, denied Miller's motion *in limine*:

> [A]fter the close of trial yesterday, I took the video, looked at it and I do not believe that the references to alcohol or potential drug use having perhaps made him[Miller] forget the events needed to

be redacted because, first of all, he[Miller] denied that it had any effect and, if anything, it's clear that it's the suggestion of the officer and not his[Miller's] suggestion that for some reason justified his[Miller's] acts, so I don't see it to be prejudicial.

We understand the trial judge's ruling to mean that the police officer's suggestions of alcohol or drug use to the point of memory loss were not prejudicial because they did not come from Miller and Miller flatly denied them. Put simply, no prejudice could have resulted from mere suggestions by the police officer.

Miller claims that the trial judge abused his discretion by denying the motion *in limine*. We decline to address whether the trial judge abused his discretion in denying Miller's motion. Instead, for the sake of argument, we will assume that the trial judge abused his discretion by denying Miller's motion *in limine*. The mere fact the trial judge abused his discretion, however, does not require reversal. We must determine whether the mistakes constituted significant prejudice so as to have denied Miller a fair trial.[47]

Miller fails to articulate any significant prejudice. The State presented substantial evidence that Miller raped and sexually abused his own daughter over a long period of time. Miller's natural daughter testified against him and his natural son corroborated her story. Miller provided evidence to suggest that both of his children were biased and had motives to lie. To resolve the case the jury simply needed to decide who was more credible, Miller's two children or Miller himself. The jury obviously accepted Alicia's story and An-

---

**46.** The police officer had no actual knowledge that Miller used marijuana but was employing a tactic to get Miller to confess to sexually assaulting his daughter.

**47.** *Strauss v. Biggs,* 525 A.2d 992, 997 (Del. 1987).

thony's corroboration. Miller has failed to articulate how the police officer's totally uncorroborated statements, that he flatly denied, would affect the jury's determination of his credibility in light of the balance of the evidence.[48] Therefore, even if the trial judge abused his discretion by refusing to redact references to criminal use of marijuana and alcohol abuse, Miller has failed to articulate why the jury's verdict would turn on that issue and prejudice him to the degree that we can conclude that he was denied a fair trial.

Despite the fact that admitting the police officer's suggestive questions did not affect the outcome of Miller's trial, we reluctantly find it necessary to comment about the prosecutor's trial tactics. The trial judge should never have been faced with the question of whether a portion of the videotape should have been redacted. Instead, the prosecutor should have stipulated to redacting the portion of the video where the police officer made reference to a criminal act, using marijuana, because that portion of the video had little, if any, probative value to the State's case.[49] This case involved a credibility determination; either the jury would believe Alicia and Anthony or Miller. Certainly the police officer's unsupported suggestions had no bearing on the credibility of either party.

The only thing the prosecutor could have hoped for by not stipulating to redact this portion of the video is that the jury would consider the police officer's suggestion as true and view Miller in a bad light. The prosecutor leaves us only one conclusion— he wanted the jury to consider the police officer's suggestion of marijuana use for an improper purpose.

Delaware attorneys pride themselves on treating their opponents fairly and with the utmost respect and we expect that all Delaware attorneys follow the *Principles of Professionalism for Delaware Lawyers.*[50] A few excerpts from the Principles are pertinent here:

> A lawyer should develop and maintain the qualities of integrity, compassion, learning, civility, diligence and public service that mark the most admired members of our profession.... **Whenever possible, stipulating and agreements should be made between counsel to reduce both the cost and the use of judicial time.... Good faith efforts should be made to resolve by agreement objections to matters contained in the pleadings, discovery requests, and objections.**

Therefore, even putting aside a prosecutor's heightened duties,[51] the prosecutor,

---

48. Moreover, the fact that defense counsel did not seek a curative instruction leads to the reasonable conclusion that if any prejudice existed it was minimal. Certainly defense counsel would have sought a curative instruction if he believed that admitting the statement would result in significant prejudice.

49. The only probative value that the State could explain at oral argument was that the jury needed to see the whole video to understand the full context of the questioning. This specious argument is embarrassingly lacking in substance.

50. *See e.g., Paramount Communications v. QVC Network,* 637 A.2d 34, 53 (Del.1994).

51. We have repeatedly recognized the important role of a prosecutor and discussed a prosecutor's ethical obligations. Over 40 years ago, we stated "A prosecuting attorney represents all the people, including the defendant who [is] being tried. It is his duty to see that the State's case is presented with earnestness and vigor, but it is equally his duty to see that justice be done by giving defendant a fair and impartial trial." *Bennett v. State,* 164 A.2d 442, 446 (Del.1960). More recently we stated "prosecutors must resist the urge to win at all costs." *Trump v. State,* 753 A.2d 963, 969 (Del.2000).

Here, the prosecutor could have simply redacted the portions of the tape referencing marijuana and Miller still would have been

as a Delaware attorney, should have stipulated to the redaction of the statements about marijuana because the statements offered little, if anything, to the State's case and had the clear potential to create unfair prejudice.

### E. The trial judge allegedly abused his discretion by denying Miller's Motion for a Mistrial.

 Miller next contends that the trial judge erred by denying his Motion for a Mistrial. Miller sought a mistrial because Alicia, during her direct examination, made reference to an earlier sexual assault by Miller. The trial judge denied Miller's motion:

> I think what happened, so the record can reflect this, she began making a statement, I interrupted her and she may have completed it but it was over my 'Counsel, I need to see you at sidebar,' so I am not convinced that the jury would have clearly heard her whole response and I'm concerned that if I try to cure it by asking them to strike it, I may be highlighting what I'm trying not to have them—what I'm going to generally say is that the last question and answer doesn't have any relevance and is stricken and I'll ask you to go on...

 We review a trial judge's denial of a motion for a mistrial under an abuse of discretion standard.[52] "A trial judge should grant a mistrial only where there is a 'manifest necessity' or the 'ends of public justice would be otherwise defeated.'"[53]

Miller's argument lacks merit. The trial judge interrupted Alicia before she finished her unresponsive answer. Because the trial judge interrupted the witness, neither defense counsel nor the prosecutor were immediately aware of any prejudice resulting from Alicia's answer.[54] As the State suggests, if the attorneys did not note the potential for prejudice, it is highly unlikely that the jury would have recognized the potential for prejudice. Moreover, the trial judge properly removed any potential for prejudice without placing emphasis on the issue by striking the question and answer from the record. Therefore, because the trial judge removed any potential for prejudice and the unresponsive answer did not undermine Miller's right to a fair trial, the trial judge did not abuse his discretion by denying Miller's Motion for a Mistrial.

### F. The trial judge allegedly abused his discretion by admitting Alicia's handwritten statements explaining the sexual assaults.

 Alicia provided the Florida police with a handwritten statement describ-

---

convicted. Instead, the prosecutor decided to force this small, irrelevant issue and risk the chance that Miller's conviction would be overturned on appeal. In sum, the admission of the portion of the statement suggesting prior bad acts did not further the State's case, and the mere presence of the issue in the case ultimately has resulted in a waste of judicial, prosecutorial, and defense resources.

**52.** *Taylor v. State,* 690 A.2d 933, 935 (Del. 1997).

**53.** *Hendricks v. State,* 871 A.2d 1118, 1122 (Del.2005) (citing *Steckel v. State,* 711 A.2d 5,

11 (Del.1998) (quoting *Fanning v. Superior Court,* 320 A.2d 343, 345 (Del.1974))).

**54.** After the trial judge interrupted the witness, the following exchange took place at sidebar:

> [Defense]: I actually was almost ready to object but wasn't sure what was said because I couldn't hear it.
>
> Court: I can tell you, 'Because when she told me and my brother about an incident like this happened in Jamaica.'
>
> [Prosecutor]: If I heard that, I certainly would have interrupted her.

ing how and when Miller sexually assaulted her. Over defense counsel's objection, the State introduced the statements under 11 *Del. C.* § 3507. Miller contends that the trial judge erred by admitting these handwritten statements. "Our review of a ruling on the admissibility of a Section 3507 statement is for abuse of discretion." [55]

11 *Del.C.* § 3507 provides:

(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

Here, the parties agree that Alicia voluntarily made the statement. Miller, however, argues that the Florida police had to be subject to cross-examination for the statements to be admissible under § 3507. In *Keys v. State*, we addressed the "subject to cross-examination requirement" of § 3507:

the declarant must be called as a witness by the party introducing the statement and the direct examination of the declarant 'should touch both on the events perceived and the out-of-court statement itself.' [56]

Alicia, not the Florida police, made the written statements. The State called Alicia, the author (declarant) of the written statements, and her direct examination touched on the written statements themselves. Therefore, because Alicia's statements were voluntary and she was subject to cross-examination, her statements were admissible under § 3507.

Miller also suggests that even if the statements were admissible under § 3507, the Confrontation Clause of the United States Constitution as interpreted in *Crawford v. Washington* [57] bars the admission of the statements. This argument also lacks merit. In *Crawford*, the United States Supreme Court stated:

when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. [58]

As discussed above, Alicia, the declarant, testified at trial and defense counsel cross-examined her about her earlier written statements. Therefore, the Confrontation Clause placed no constraints on the use of her earlier statements. [59]

### G. The trial judge allegedly abused his discretion by limiting defense counsel's cross of Alicia.

At trial defense counsel sought to attack Alicia's credibility in various ways. Defense counsel suggested that Alicia had a motive to lie because she disliked her father. Particularly, defense counsel suggested that Alicia disliked Miller because he allowed Megan Cantwell, Miller's girlfriend who mistreated Alicia, to move into his home. Miller now contends that the trial judge prevented him from asking Alicia detailed questions about his relation-

---

**55.** *Johnson v. State*, 878 A.2d 422, 427 (Del., 2005) (citations omitted).

**56.** *Smith v. State*, 669 A.2d 1, 6 (Del.1995) (*citing Keys v. State*, 337 A.2d 18 (1975)).

**57.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**58.** *Crawford*, 541 U.S. at 59, 124 S.Ct. 1354.

**59.** Miller also contends, in a conclusory fashion, that the trial judge abused his discretion by admitting Alicia's handwritten statements because the probative value of the handwritten statements was outweighed by "undue prejudice or cumulativeness and unfair confusion." We disagree. Alicia's statements had probative value to the State's case—they implicated Miller and corroborated Alicia's live testimony—and Miller failed to articulate any unfair prejudice.

ship with Cantwell, and that this limit on Alicia's cross-examination prevented Miller from demonstrating Alicia's bias and motive to lie, resulting in an unfair trial.

Miller's argument lacks merit. When questioning Alicia about Cantwell, defense counsel asked Alicia whether her father went to Family Court to have Cantwell removed from his residence for threatening Alicia and her brother. The State objected and the trial judge sustained the objection:

> The Court: You can inquire whether or not she enjoyed having her there, liked her, believed she was a good mother, you can make inquiry, but this Family Court matter has no relevance at all. So you may inquire—
>
> ... what you're trying to do in a roundabout way is trying to boost the credibility of your client. It has nothing to do with the potential bias or prejudice of this witness. You're trying to say, well, your client did the right thing so, therefore, the jury should like him.

The trial judge's ruling simply pointed out that the fact that Miller went to Family Court to have Cantwell removed was inadmissible because it injected improper character evidence. The trial judge's ruling did not hinder Miller's ability to show that Alicia was angry at Miller for allowing Cantwell to live with them. In fact, the questions immediately following the trial judge's ruling demonstrate that Miller had an opportunity to establish that Alicia resented him as a result of his relationship with Cantwell:

> Q: Alicia, was there a period of time when [Cantwell] made you feel extremely uncomfortable?

> A: Yes.
> Q: And were you mad at your dad for that for a while?
> A. Yes.
> Q: And even after you dad got [Cantwell] to leave, were you still angry at your dad because of your feelings about Megan?
> A: No.
> Q: So you didn't harbor any resentment about Megan after she was gone.
> A: No.
> Q: How long were you angry with you dad while Megan was there and for that reason?
> A: A while, until she actually left.

Clearly the testimony above indicates that the trial judge's ruling did not affect Miller's ability to show Alicia's bias. Further, as the trial judge found, the fact that Miller went to Family Court to have Cantwell removed had no relevance to Alicia's bias and was an indirect way of admitting improper character evidence. Therefore, the trial judge did not abuse his discretion by sustaining the State's objection.

## H. The trial judge allegedly commented on the evidence when he instructed the jury.

 Before trial, the trial judge asked the prosecutor to clarify some general assertions in the indictment. Particularly, the trial judge wanted to know how the jury could distinguish between the eight general counts of Rape. In response the prosecutor explained that he planned to link each count of Rape to specific acts about which Alicia would testify.

During closing arguments, the prosecutor did exactly what he suggested before trial. He explained six [60] specific acts that

---

**60.** As indicated earlier, two of the eight counts in the indictment were dismissed at the suggestion of the prosecutor.

Alicia testified about and linked each act to a count in the indictment. After closing arguments, the trial judge instructed the jury using the same format as the prosecutor:

So let me turn to the first offenses, which are Rape in the First Degree. Defendant is charged with six counts of Rape First Degree. And the first four counts are identical and read as follows: Sylvester Miller, between on or about the first day of October, 1998 and the 31st day of December, 2002 in the County of New Castle, State of Delaware, did intentionally engage in sexual intercourse with Alicia Miller, a child who had not yet reached her 16th birthday, and the defendant stands in a position of trust, authority or supervision over the child.

Now, while these four counts read alike, each count references a particular act which **allegedly** occurred and which is characterized as follows:

Count I relates to the **alleged** sexual intercourse the night before Christmas.

Count II relates to the **alleged** sexual intercourse the night Alicia Miller's brother observed her and her father.

Count III relates to the **alleged** sexual intercourse on the night she was **allegedly** dragged into her father's bedroom to have oral sex.

And Count IV relates to the first time Alicia Miller was **allegedly** forced to have anal intercourse.

Now, the remaining two counts of Rape First Degree are similar but reference conduct that occurred between January 1, 2003 and July 27, 2004 after Alicia Miller had turned 14 years of age. And these two counts are identical and state.

Sylvester Miller, between on or about the 1st day of January, 2003 and the 27th day of July 2004, in the County of New Castle, State of Delaware, did intentionally engage in sexual intercourse with Alicia Miller, a child who had not yet reached her 16th birthday and the defendant stands in a position of trust, authority and supervision over the child.

Again, each count, Counts V and VI reference a particular act which is characterized as follows:

Count V relates to the first summer after Alicia Miller had turned 14 and **allegedly** had anal sex.

Count VI relates to the most recent **allegation** of sexual intercourse just before Alicia Miller went to Florida.

■ For the first time on appeal, Miller contends that the trial judge impermissibly commented on the evidence in violation of Article IV, Section 19 of the Delaware Constitution. We review this issue under the plain error standard. "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process." [61]

Article IV, Section 19 of the Delaware Constitution states that "judges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law." We recently discussed Section 19 of the Delaware Constitution in *Herring v. State* [62]. There, we stated:

Section Nineteen was adopted as a new provision in the 1897 Constitution to ensure that judges confined themselves to making determinations of law and leaving juries to determine the facts.

---

**61.** *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986).

**62.** 805 A.2d 872, 876 (Del.2002).

The purpose of the provision was to protect the province of the jury on factual issues. It was not, however, the intention of the framers to impose any restraint on the proper province of the trial judge in either passing upon the legal admissibility of evidence or in instructing the jury on the law.[63]

Further, we discussed when a trial judge's comment about a fact would violate the Delaware Constitution:

> **Trial judges may properly combine a statement regarding a fact in issue with a declaration of law.** Trial judges may not, however, comment on the facts in their charge to the jury since only juries are entitled to judge the facts. **An improper comment or charge as to 'matters of fact' is an expression by the court, directly or indirectly, that conveys to the jury 'the court's estimation of the truth, falsity or weight of testimony in relation to a matter at issue.'** [64]

Here, the trial judge acted within the bounds of the Delaware Constitution because none of his statements conveyed the court's estimation of the truth or weight of the testimony. In fact, directly contrary to what Miller suggests, every "fact" that the trial judge commented upon he described as an "allegation."

Miller contends, however, that despite framing every fact as an "allegation", the trial judge's instruction was an improper comment on the evidence because it correlated the events to the vague indictment. We disagree. The trial judge's combination of the factual "allegations" with the law ensured that the jury understood how the asserted facts, if true, related to each of the indictment counts. Therefore, the trial judge did not impermissibly comment on the evidence in violation of Article IV, Section 19 of the Delaware Constitution.

For the foregoing reasons, the judgment of the Superior Court is **AFFIRMED**.

---

**63.** *Id.* (citing *Lunnon v. State,* 710 A.2d 197, 201 (Del.1998)).

**64.** *Id.* (citing *State v. Halko,* 193 A.2d 817, 829 (Del.Super.Ct.1963)).