IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEANNA MCKEEHAN, | § | |
| | § | No. 56, 2025 |
| Plaintiff Below, Appellant, | § | |
| | § | Court Below–the Superior |
| v. | § | Court of the State of Delaware |
| | § | |
| DELAWARE NEUROSURGICAL | § | C.A. No. N21C-11-174 |
| GROUP and PAUL T. BOULOS, | § | |
| M.D., | § | |
| | § | |
| Defendants Below, Appellees. | § | |
| | § | |

Submitted: November 12, 2025
Decided: February 2, 2026

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

**<u>ORDER</u>**

After consideration of the parties' briefs and the record on appeal, and following oral argument, it appears to the Court that:

1)      Appellant Deanna McKeehan, the plaintiff in this medical malpractice action, appeals from a Superior Court judgment, based on a unanimous jury verdict, in favor of the defendants. McKeehan argues that the trial court erred by not sufficiently instructing the jury on the manner in which they should consider the medical experts' "risk of the procedure" testimony and related argument by defense counsel. She claims that the limiting instruction she proposed—that the trial court rejected—was necessary to clarify that a known risk of a surgery could still be caused

by the negligence of a surgeon. For the reasons set forth below, we affirm the Superior Court's judgment.

2)      In August 2019, an ambulance transported McKeehan, who had been involved in a motor vehicle collision, to Christiana Care Hospital.[1] There, the staff performed a CT scan of McKeehan's brain. The scan revealed two unruptured brain aneurysms—one in her middle cerebral artery and the other in her internal carotid artery bifurcation.[2]

3)      McKeehan scheduled a neurological examination with a specialist to evaluate her options for treatment of the brain aneurysms. McKeehan met with Paul T. Boulos, M.D., a neurosurgeon.[3] Dr. Boulos recommended that McKeehan undergo an aneurysm clipping procedure, which involved placing small ligation clips across the entry point of each aneurysm to block blood flow.[4] Decreasing blood flow would stop the aneurysms from rupturing.[5] McKeehan agreed to have Dr. Boulos perform the procedure.[6]

---

[1] App. to Opening Br. at A101, A116, A176 [hereinafter "A__"] (McKeehan Depo. Tr. 20:1–2, 35:5–9, 95:17–19 (June 8, 2022)) [hereinafter "Depo. Tr."].

[2] A210 (Pre-Trial Stip. at 1). A "CT scan" stands for computed tomography scan.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] A119 (Depo. Tr. 38:6–8).

2

4) In September 2019, Dr. Boulos performed the procedure.[7] Immediately after surgery, Dr. Boulos performed a neurosurgical examination on McKeehan. During the exam, Dr. Boulos discovered that McKeehan's body was impaired—she could not bend her left arm or left leg.[8] Dr. Boulos considered these symptoms as common side effects of neurosurgery, so he did not order diagnostic imaging. He also believed that diagnostic imaging would be unreliable due to McKeehan's weakened state and the lingering effects of anesthesia.[9] Several hours after the surgery, a physician's assistant ordered a CT scan for McKeehan, and the results evidenced signs of a stroke.[10]

5) In 2021, McKeehan filed a complaint against Dr. Boulos and the Delaware Neurosurgical Group (together, the "Defendants") for medical negligence in the Superior Court.[11] McKeehan claims that Dr. Boulos deviated from the applicable standard of care by failing to adjust one of the ligation clips after an

---

[7] App. to Answering Br. at B21 [hereinafter "B__"] (Intraoperative Monitoring Report dated Sep. 18, 2019, at 1).

[8] A558 (Trial Tr. 104:5–11 (Jan. 9, 2025)) (Dr. Boulos); A104–06 (Depo. Tr. 23:3–25:23).

[9] A211 (Pre-Trial Stip. at 2); A565 (Trial Tr. 111:5–17 (Jan. 9, 2025)) (Dr. Boulos).

[10] A636 (Trial Tr. 182:16–19 (Jan. 9, 2025)) (Dr. Boulos). An MRI stands for magnetic resonance imaging.

[11] A63–65 (Am. Compl. ¶¶ 25–30). In her amended complaint, McKeehan alleged that "Dr. Boulos was employed by and/or acting as an agent for Delaware Neurosurgical Group." A61 (Am. Compl. ¶ 12). McKeehan also sued Christiana Care Health Services, Inc., Dr. Mark M. Caruso, Dr. Tak C. Liu, and Anesthesia Services, P.A., but she stipulated to, and the court granted, a joint stipulation to dismiss those defendants. *See* Ct. Order, *McKeehan v. Christiana Care Health Servs., Inc.*, C.A. No. N21C-11-174 (Del. Super. Nov. 10, 2022), Dkt. No. 63.

attending electrophysiologist notified him that blood flow to the brain (through the middle cerebral artery) had been significantly reduced, causing motor signal loss to some of McKeehan's extremities.[12] McKeehan claims that this failure caused her stroke.[13] Defendants deny that Dr. Boulos deviated from the standard of care and contend that the stroke resulted from the surgery itself, as a stroke is a known complication of the surgery.[14]

6) At trial, medical experts from both sides testified that a stroke is a common complication of the surgery.[15] McKeehan's neurosurgical expert, Dr. John Diaz-Day, testified on cross-examination that a stroke is a "known complication" of the surgery and, therefore, a stroke can occur "absent any negligence."[16] Defense neurosurgical expert, Dr. William Broaddus, testified that a stroke is "one of the most significant and unfortunately more common" complications of the surgery.[17] He also testified that, in this case, the stroke was a "necessary result of controlling the aneurysm."[18] Another defense neurological expert, Dr. Owen B. Samuels, testified that a stroke is a "routine" complication of the surgery due to the "nature of

---

[12] A63–64 (Am. Compl. ¶ 25); A211 (Pre-Trial Stip. at 2).

[13] A210–11 (Pre-Trial Stip. at 1–2).

[14] *Id.*

[15] A490 (Trial Tr. 36:3–5 (Jan. 9, 2025)) (Dr. Boulos).

[16] A383–84 (Trial Tr. 94:13–95:10 (Jan. 7, 2025)) (Dr. Diaz-Day).

[17] A668–69 (Trial Tr. 22:19–20:16 (Jan. 10, 2025)) (Dr. Broaddus) [hereinafter "Jan. 10 Trial Tr."].

[18] A725–26 (Jan. 10 Trial Tr. 79:18–80:1) (Dr. Broaddus).

neurosurgery and aneurysms and neurosurgical-related issues."[19] Defense counsel highlighted the experts' testimony in his closing: "So how about the timing of the stroke? Stroke's a known complication of the procedure that can occur without negligence. It happened to Dr. Diaz-Day before. It happened with Dr. Boulos, Dr. Broaddus. It happened to all the experts you've heard from."[20]

7) One of the pattern jury instructions the court intended to charge the jury with was titled *Definition of Medical Negligence*.[21] The last paragraph of the instruction states –

> No presumption of medical negligence arises from the mere fact that the patient's treatment had an undesirable result. Medical negligence is never presumed. The fact that a patient has suffered injury while in the care of a healthcare provider does not mean that the healthcare provider is liable for medical negligence.[22]

McKeehan claimed that additional language was needed in this jury instruction to clarify that, although a stroke was a known risk of this type of procedure, a surgeon's negligence could still cause the stroke.[23] She proposed the following language:

> During this trial you have heard witnesses testify that a stroke is a risk of the procedure done in this case. You must not consider that evidence

---

[19] B58 (Trial Tr. 7:9–20 (Jan. 13, 2025)) (Dr. Samuels).

[20] A818 (Trial Tr. 27:10–15 (Jan. 14, 2025) (excerpt from defense counsel's closing argument at trial).

[21] A857, A860–61 (Jury Instrs. at 4, 7–8 (Jan. 14, 2025)).

[22] A861 (Jury Instr. at 8 (Jan. 14, 2025)).

[23] A778 (Prayer Conf. Tr. 22:16–23 (Jan. 13, 2025)) [hereinafter "Conf. Tr."].

on the issue of whether defendants breached the applicable standard of care.[24]

8)     McKeehan argued further that the court should include her language because the expert testimony elicited by Defendants violated the pre-trial order by injecting the issue of "informed consent" into the trial.[25]  Defendants objected to McKeehan's proposed language as "improper and misleading."[26]  They argued that the pattern jury instructions were sufficient because the testimony did not concern "informed consent."[27]  Instead, the testimony was consistent with their defense strategy—that the stroke was not caused by negligence, but rather, was an unfortunate consequence of the surgery.[28]

9)     During the prayer conference, the court proposed the following modification to McKeehan's language:

> During this trial you have heard witnesses testify that a stroke is a risk of the procedure done in this case.  The fact that a procedure has risks in and of itself does not excuse defendants of liability for any negligence.[29]

---

[24] A753 (McKeehan's Letter to the Super. Ct. dated Jan. 13, 2025, at 2) [hereinafter "Pl. Letter"].

[25] A752–53 (Pl. Letter at 1–2).  "'Informed consent' means the consent of a patient to the performance of health-care services by a health-care provider given after the health-care provider has informed the patient, to an extent reasonably comprehensible to general lay understanding, of the nature of the proposed procedure or treatment and of the risks and alternatives to treatment or diagnosis which a reasonable patient would consider material to the decision whether or not to undergo the treatment or diagnosis."  18 *Del. C.* § 6801(5).

[26] A755 (Defendants' Letter to Super. Ct. dated Jan. 13, 2025, at 1) [hereinafter "Defs. Letter"].

[27] A755–56 (Defs. Letter at 1–2).

[28] *Id.*

[29] A780 (Conf. Tr. 24:6–11).

Although the court proposed modified language, it reserved its decision as to whether the language was necessary at all.[30] Later that same day, the Superior Court informed the parties that it would not include any additional language because the court was "satisfied that the pattern negligence jury instructions [were] sufficient."[31] The court further noted that adding the proposed language would conflict with the pattern instructions.[32] After the jury returned a verdict in favor of Defendants, McKeehan appealed to this Court, arguing that the trial court should have included the modified language in its jury charge.

10) "The decision to give a particular jury instruction is within the sound discretion of the trial judge, and we will not reverse that decision absent an abuse of discretion."[33] "An abuse of discretion occurs when the trial judge 'exceed[s] the bounds of reason in view of the circumstances and has so ignored recognized rules of law or practice so as to produce injustice.'"[34]

11) The Superior Court's decision not to modify the pattern instruction did not exceed reason or ignore the law. McKeehan does not have a right to a particular

---

[30] A774 (Conf. Tr. 18:21–23).

[31] Opening Br., Ex. A (Ct. email to counsel of record dated Jan. 13, 2025).

[32] *Id.*

[33] *Miller v. State*, 893 A.2d 937, 949 (Del. 2006).

[34] *State v. Wright*, 131 A.3d 310, 320 (Del. 2016) (quoting *Charbonneau v. State*, 904 A.2d 295, 304 (Del. 2006)).

jury instruction, and even the pattern instructions are not mandatory.[35]  Instead, she

has a right to jury instructions that accurately state the law and are "reasonably

informative and not misleading."[36]  The court properly instructed the jury on the

definition of medical negligence.[37]  The jury was instructed on *Elements of Medical*

*Negligence*, *Burden of Proof by a Preponderance of the Evidence*, *Definition of*

*Medical Negligence*, and *Proximate Cause*.[38]  Taken together, these instructions

provided sufficient information for the jury to decide the case on its merits.[39]  Thus,

McKeehan's proposed language was not necessary to give the jury a correct

statement of the law.

---

[35] *Miller*, 893 A.2d at 949.  McKeehan argues that we should apply *de novo* review here because she sought to introduce a "new" jury instruction.  Opening Br. 11.  Defendants disagree.  They assert that McKeehan actually seeks to amend the pattern instruction defining medical negligence.  Answering Br. 3, 15.  We agree with Defendants and find that an abuse of discretion standard is more appropriate in this case.  *See Wright v. State*, 953 A.2d 144, 148 (Del. 2008) (holding that the trial court's refusal to instruct on an area of law is reviewed *de novo*, but a request for the court to give a "particular" instruction by changing the "form, content or language" is reviewed for an abuse of discretion).

[36] *McKenzie v. Blasetto*, 686 A.2d 160, 163 (Del. 1996) (citations omitted) ("The [plaintiffs] may not insist upon a particular jury instruction, but they do 'have the unqualified right to have the jury instructed with a correct statement of the substance of the law.'  The instructions need not be perfect, and this Court will not reverse as long as they are 'reasonably informative and not misleading. . . .'").

[37] *See* Del. Super. P.J.I. Civ. § 7.1A (2000); *see also* 18 *Del. C.* § 6801(6) ("'Medical negligence' means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health-care provider to a patient. The standard of skill and care required of every health-care provider in rendering professional services or health care to a patient shall be that degree of skill and care ordinarily employed in the same or similar field of medicine as defendant, and the use of reasonable care and diligence.").

[38] A857–58, A860–62 (Jury Instrs. at 4–5, 7–9 (Jan. 14, 2025)).

[39] *Miller*, 893 A.2d at 949.

12) McKeehan's proposed language was also likely to confuse the jury. In particular, the jury could interpret McKeehan's second sentence—"The fact that a procedure has risks in and of itself does not excuse defendants of liability for any negligence"—to shift the burden of proof from McKeehan to Defendants. It shifts the burden by undermining the "never presumed" language of the pattern definition instruction. The "never presumed" language makes clear that the plaintiff must prove the elements of negligence at trial, as a jury may not base its negligence finding on the mere fact that the plaintiff suffered an injury as a patient. Thus, McKeehan's proposed language would not have aided the jury in its deliberations.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice